[No. 69053-7. En Banc.]
Argued June 2, 2000.     Decided February 22, 2001.

VICTOR MOORE, ET AL., *Respondents*, v. WHITMAN COUNTY, *Appellant*.

*James H. Kaufman, Prosecuting Attorney*, and *Ronald D. Shirley, Deputy*, for appellant.

*Dawn Reynolds* (of *Reynolds & Price*); and *Christine O. Gregoire, Attorney General*, and *Marjorie T. Smitch, Assistant*, for respondents.

*Christine O. Gregoire, Attorney General*, and *Alan D. Copsey, Assistant*, on behalf of the State of Washington, amicus curiae.

SANDERS, J. — The plain and unambiguous language of RCW 36.70A.250 limits the jurisdiction of the Eastern Washington Growth Management Hearings Board (Board) to counties located east of the Cascade Mountains "that are required to or choose to plan under RCW 36.70A.040." Whitman County is neither required nor has chosen to plan under the Growth Management Act (GMA). Therefore the determinative question in this appeal is whether the Board has jurisdiction over Whitman County, not whether Whitman County complied with the GMA. Finding the Board lacked jurisdiction to enter the order which is the subject of this appeal, we reverse and dismiss.

This jurisdictional question was squarely presented after we accepted direct review on certification from the Court of Appeals, Division Two, of the Thurston County Superior Court order favoring respondents Victor and Roberta Moore. The Moores had administratively appealed the Board's holding, seeking a superior court determination that Whitman County's critical areas ordinance did not comply with RCW 36.70A.060(2) and .170(1)(d) of the GMA. Because the Moores substantially prevailed in Superior Court, Whitman County then appealed to the Court of Appeals, Division Two. That court certified the appeal to us inviting our direct review.

The GMA does not require Whitman County to adopt a comprehensive land use[1] plan or development regulations

---

[1] The GMA distinguishes between the phrase "[a]dopt a comprehensive land use plan," under RCW 36.70A.030(1), and the definition of a "comprehensive plan," or "plan" under RCW 36.70A.030(4). According to RCW 36.70A.030(1), "[a]dopt a comprehensive land use plan" means "to enact a new comprehensive land use plan

that are consistent with and implement the comprehensive plan because, under RCW 36.70A.040, Whitman County, like other similarly situated counties,[2] does not have a population of 50,000 or more and has not experienced an increase in its population by more than 10 percent in the 10 years prior to May 16, 1995; nor has it experienced an increase in its population by more than 17 percent in the 10 years prior to May 16, 1995; nor, regardless of population, has it experienced an increase in its population by more than 20 percent in the previous 10 years; nor has the Board of County Commissioners, as the county legislative authority, passed a resolution exercising the option of operating under the GMA.[3]

It is not disputed that, with the exception of the cities of Pullman and Colfax, between 95 and 98 percent of the land in Whitman County is devoted to agricultural purposes and 98 to 99 percent of the unincorporated county is zoned for agriculture.[4] Nor is it disputed that the near exclusive application of the land to agricultural purposes in the County is not reasonably likely to change in the future.[5]

---

or to update an existing comprehensive land use plan." Under subsection (4), a "[c]omprehensive land use plan," "comprehensive plan," or "plan" means "a generalized coordinated land use policy statement of the governing body of a county or city that is adopted pursuant to this chapter."

[2] "Other similarly situated counties" refers to the 10 counties not subject to the full comprehensive planning requirements of the GMA. The remaining 29 counties (and the cities within them) are required to comply with the GMA's full comprehensive planning requirements because the counties either were required to do so under RCW 36.70A.040(1) or opted to do so under subsection (2). *See* Amicus Br. of the State of Washington, Department of Community, Trade and Economic Development at 6.

[3] RCW 36.70A.040(1), (2); *see* Clerk's Papers at 162 [Br. of Resp't (Appellant Whitman County), Thurston County Superior Court dated June 19, 1998, at 1]; *see* Br. of Appellant, Supreme Court, dated Sept. 1, 1999, at 14.

[4] Clerk's Papers at 162-63 [Br. of Resp't (Appellant Whitman County), Thurston County Superior Court dated June 19, 1998, at 1-2].

[5] *Id.* Appellant states that since Whitman County's zoning codes and regulations are very restrictive in nature, it is unlikely the County will rezone lands designated as agricultural.

*Jurisdiction of the Growth Management Hearings Boards*

"[A]n agency may only do that which it is authorized to do by the Legislature." *Rettkowski v. Dep't of Ecology*, 122 Wn.2d 219, 226, 858 P.2d 232 (1993). RCW 36.70A.250 plainly limits the jurisdiction of these boards only to counties which "plan." It provides:

**Growth management hearings boards.** (1) There are hereby created three growth management hearings boards for the state of Washington. The boards shall be established as follows:

(a) An Eastern Washington board *with jurisdictional boundaries including all counties that are required to or choose to plan under RCW 36.70A.040* and are located east of the crest of the Cascade mountains;

(b) A Central Puget Sound board with jurisdictional boundaries including King, Pierce, Snohomish, and Kitsap counties; and

(c) A Western Washington board *with jurisdictional boundaries including all counties that are required or choose to plan under RCW 36.70A.040* and are located west of the crest of the Cascade mountains and are not included in the Central Puget Sound board jurisdictional boundaries. Skamania county, *should it be required or choose to plan under RCW 36.70A.040*, may elect to be included within the jurisdictional boundaries of either the Western or Eastern board.

(2) Each board shall only hear matters pertaining to the cities and counties located within its jurisdictional boundaries.

RCW 36.70A.250 (emphasis added). Thus, the jurisdiction of the Eastern and Western boards is limited to those counties "that are required or choose to plan under RCW 36.70A.040." Whitman County isn't and doesn't.

RCW 36.70A.040 identifies which counties must conform to the extensive requirements of the GMA. RCW 36.70A.040(1) requires a county to adopt a comprehensive land use plan and development regulations implementing such plan if the county (1) has a population of 50,000 or more and has experienced a recent population increase of more than 10 or

17 percent or (2) regardless of population, has experienced a recent population increase of more than 20 percent. RCW 36.70A.040(2) permits a county that does not meet the criteria established in subsection (1) to adopt a resolution opting into the elaborate requirements of the GMA. Whitman County does not have a population of 50,000 or more nor has it experienced the substantial and rapid growth described in RCW 36.70A.040(1). Nor has Whitman County passed a resolution opting into the GMA. Accordingly, as Whitman County is not required to and has not chosen to plan pursuant to RCW 36.70A.040, it does not meet the detailed requirements of RCW 36.70A.250 and does not fit within the jurisdictional boundaries of the Board.

If we apply RCW 36.70A.250 as written—without "construing" it—this court can come to no other conclusion but that the Legislature intended to limit the jurisdiction of the boards to those counties which plan. A comparison of each subsection of RCW 36.70A.250(1) demonstrates this plain intent as well.

The Board is vested by statute with "jurisdictional boundaries including all counties that are required to or choose to plan under RCW 36.70A.040 and are located east of the crest of the Cascade mountains." RCW 36.70A.250(1)(a). The statute thus expresses the Legislature's clear intent to grant the Board jurisdiction over counties that *both* (1) have experienced substantial and rapid population growth or who have voluntarily opted into the GMA and (2) are located east of the crest of the Cascade Mountains. Had the Legislature intended to simply divide the state on a geographical basis it would have omitted the language referencing counties "required to or choos[ing] to plan under RCW 36.70A.040."[6] RCW 36.70A.250(1)(a). As the actual language used by the Legislature is clear and unambiguous it requires no judicial "interpretation."

---

[6] This portion of the statute would then read: "An Eastern Washington board with jurisdictional boundaries including all counties that are located east of the crest of the Cascade mountains."

■ ■ Other sections of the same statute require this result as well.

The description of the Central Puget Sound Hearings Board notably does *not* include such limiting language but instead provides the Central board shall have "jurisdictional boundaries including King, Pierce, Snohomish, and Kitsap counties." RCW 36.70A.250(1)(b). This language is also plain and unambiguous and means what it says—the Central board has jurisdiction over King, Pierce, Snohomish, and Kitsap counties—without regard to any other limiting criterion.

In contrast, the jurisdictional boundaries of the Western Washington Hearings Board are described as

> including all counties that are required or choose to plan under RCW 36.70A.040 and are located west of the crest of the Cascade mountains and are not included in the Central Puget Sound board jurisdictional boundaries. Skamania county, should it be required or choose to plan under RCW 36.70A.040, may elect to be included within the jurisdictional boundaries of either the Western or Eastern board.

RCW 36.70A.250(1)(c). Like that of the Eastern board, the Legislature vested the Western board with jurisdiction over counties that both (1) have experienced substantial and rapid population growth or who have voluntarily opted into the GMA *and* (2) are located west of the crest of the Cascade Mountains. This is also demonstrated by the statutory reference to the jurisdiction of the Western board over Skamania County, allowing Skamania County an election between the Western and Eastern boards—*should* it be required or choose to plan under RCW 36.70A.040. This plain language directs the jurisdictional boundaries of *neither* board to include Skamania County—*unless and until* the county experiences substantial and rapid population growth or voluntarily opts into the GMA.[7] If the Board

---

[7] RCW 36.70A.040(5) provides, "If the office of financial management certifies that the population of a county that previously had not been required to plan under subsection (1) or (2) of this section has changed sufficiently to meet either of the sets of criteria specified under subsection (1) of this section," then the county

had jurisdiction over Whitman County, however, Skamania County would be included within a growth management hearings board (GMHB) jurisdiction without regard to whether it experienced rapid growth or opted in. Such interpretation is facially inconsistent with the express language of the statute.

In fact, even the Washington State Attorney General, the author of an amicus brief generally supporting Moores' position, recognizes the GMA has limited application.

> This legislation [the GMA] was intended to govern *certain* counties and cities in planning urban growth.
>
> The GMA requires *some* government entities [footnote 1] to formulate and enact comprehensive land use plans and development regulations.

1992 Op. Att'y Gen. No. 23, at 2-3 (1992 WL 512203) (emphasis added). Therein, moreover, footnote 1 explains "those cities and counties either required to plan or choosing to plan, under RCW 36.70A.040, *and thus subject to the requirements of the GMA*, will be referred to in this opinion as 'government entities'." (Emphasis added.) It makes sense, of course, that if a county is not experiencing any growth such county need not be managed under the *Growth* Management Act. And if a county is not subject to the requirements of the GMA, it need not fall within the jurisdiction of any particular GMHB.

Respondents rely heavily upon RCW 36.70A.280 and the enforcement provisions of the GMA to support their claim RCW 36.70A.250 merely divides all Washington counties and cities for geographical purposes.

There are two alternatives to board review contained within the GMA itself. First, the Department of Community, Trade, and Economic Development is statutorily required to provide mediation services for a variety of issues, including mediation to avoid the imposition of sanctions— all without resort to a GMHB. *See* RCW 43.330.120;

---

must adopt a comprehensive land use plan and development regulations implementing such plan.

36.70A.110(2), .190, .210. The GMA also allows the superior court to directly review a petition for review filed under the GMA, thus bypassing the Board entirely. *See* RCW 36.70A.295.

More fundamentally the courts themselves serve as the traditional, if not preferred, forum to resolve legal disputes. The Land Use Petition Act governs all land use decisions not subject to review under the GMA, relying on the judicial system for resolution of such questions. *See* RCW 36.70C-.030; *see also Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 178, 4 P.3d 123 (2000) ("If a GMHB does not have jurisdiction to consider a petition, it must be filed in superior court under [Land Use Protection Act]."). Accordingly, there are several possible alternatives beyond the GMHBs to ensure compliance with the GMA.

■ We recently noted:

> The GMA was a legislative compromise, and how it is carried out and enforced is a reflection of this compromise. [The] GMA was spawned by controversy, not consensus. . . .
>
> "Both installments of the Act were riddled with politically necessary omissions, internal inconsistencies, and vague language . . . ."

*Ass'n of Rural Residents v. Kitsap County*, 141 Wn.2d 185, 188, 4 P.3d 115 (2000) (quoting Richard L. Settle, *Washington's Growth Management Revolution Goes to Court*, 23 SEATTLE U. L. REV. 5, 8 (1999)). It is not the function of this court to rewrite RCW 36.70A.250.

As the Legislature did not grant the Board jurisdiction over Whitman County, we reverse the order and dismiss the proceeding.

ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, IRELAND, and BRIDGE, JJ., and GUY, J. Pro Tem., concur.

IRELAND, J. (concurring) — In the eye-catching dissent, this court is accused of antipathy to the Growth Management Act. The dissent swipes too widely. The majority is a

product of the plain language of the statute. If the Legislature intends that the Growth Management Hearings Board resolve disputes concerning critical areas in counties not engaged in comprehensive planning, the Legislature need only say so. Indeed it would be most reasonable, given the expertise of the Growth Management Hearings Boards. Unfortunately, it would require a strained interpretation to confer such jurisdiction as the statute is presently written.

TALMADGE, J.* (dissenting) — I dissent in this case because the majority, by its strained interpretation of the jurisdiction of the Eastern Washington Growth Management Hearings Board (Board), offers yet another body blow to the Growth Management Act (Act), chapter 36.70A RCW, which was designed to protect critical areas of our State and to forestall urban sprawl. The majority exempts from board review all critical areas ordinances in counties not engaging in comprehensive planning under the Act, even though the Board is the administrative agency designated by the statute with responsibility for such review. This Court's obvious antipathy to the Act, borne of an apparent philosophical hostility toward needed land use legislation generally, has clouded Washington land use law. I would find the Board had jurisdiction over this controversy, though I would reverse its exemption of existing uses in Whitman County from the Act's critical areas mandate.

Whitman County (County) is largely an agricultural county, not subject to the Act's mandate to adopt a comprehensive plan consistent with its provisions. Nevertheless, the Act required the County to designate its critical areas. RCW 36.70A.170(1)(d). "Critical areas" under the Act include the following areas and ecosystems: wetlands; areas with a critical recharging effect on aquifers used for potable water (aquifer recharge areas); fish and wildlife habitat conservation areas; frequently flooded areas; and geologically hazardous areas. RCW 36.70A.030(5). In addition, the Act also

---

* Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

required the County to adopt implementing development regulations to protect the critical areas it designated, whether or not the County was required or chose to plan under the Act. RCW 36.70A.060(2).

After the County adopted its wetlands ordinance, Victor and Roberta Moore filed an appeal to the Board claiming the ordinance did not comply with RCW 36.70A.060(2) and .170(1)(d). During the course of that appeal, the County acknowledged it had not designated the other four critical areas required by the Act. The Board ultimately concluded the wetlands ordinance met the minimum requirements of the Act as to wetlands, but ordered the County to bring the rest of its critical area efforts into compliance with the Act no later than February 2, 1996.

As part of that appeal, the Board considered an exemption for all ongoing agricultural activities in the County wetlands ordinance, which stated:

> All ongoing agricultural activities are exempt from this ordinance. Only when an agricultural activity changes to a nonagricultural lands use will it be subject to regulation by this ordinance.

Whitman County Code (WCC) 9.40.050 (Administrative R. (AR) filed Aug. 25, 1997) at 33. The Board concluded the exemption complied with the Act because RCW 36.70A-.060(1) states "[r]egulations adopted under this subsection may not prohibit uses legally existing on any parcel prior to their adoption . . . ." *See* AR at 24.

Subsequently, the County enacted ordinances for fish and wildlife habitat conservation areas and aquifer recharge areas flatly exempting all existing agricultural land and agricultural activities until the agricultural use of the property changed.

Thereafter, the Board held a compliance hearing and determined the County complied with the deadline for designating and protecting the other four critical areas categories; the Board denied a County motion to dismiss the appeal in which the County claimed the Board did not have

jurisdiction. But on the merits, the Board concluded the County's exemption for existing agricultural use violated the Act and remanded the matter to the County. The County amended the exemption to provide:

> All existing agricultural, mineral and forestry activities and uses are exempt from this ordinance. Only when an agricultural activity changes to a non-agricultural use, or a mineral activity changes to a non-mineral use, or, a forestry activity changes to a non-forestry use, will such parcel then be subject to regulation by this ordinance.

See proposed WCC 9.40.050(1), AR at 181-82. The Board found that this amendment to the ordinance brought the exemption into compliance with the Act.

Victor and Roberta Moore then sought judicial review of the Board's decision contending the County failed to comply with the Act's requirements for designation and protection of fish and wildlife habitat conservation areas, aquifer recharge areas, frequently flooded areas, and geologically hazardous areas because ongoing agricultural activities and uses were exempted from Act regulation.[8]

The trial court, the Honorable Wm. Thomas McPhee of the Thurston County Superior Court, properly determined the Board's allowance of an existing use exemption to the critical areas mandate of the Act was error:

---

[8] Of the four critical areas identified, only fish and wildlife habitat conservation areas and aquifer recharge areas are the subject of specific exemptions in Whitman County's ordinances; the Moores assert frequently flooded areas and geologically hazardous areas are also exempted de facto by the manner in which the regulations are applied. For both frequently flooded areas and geologically hazardous areas, the County selected the existing floodplain ordinance and the uniform building code and, by resolution, identified those ordinances as the County's compliance with the Act. The floodplain ordinance identifies the land it protects by reference to Federal Emergency Management Act (FEMA) and National Flood Insurance Program (NFIP) maps, and the County uses this as its critical areas designation. There was no designation for geologically hazardous areas, and no regulations that affect either category unless and until application for a building permit is filed. For agricultural land in Whitman County, it is only when a building permit application is filed for that land that the County will determine whether the property is on the side of a steep hill—geologically hazardous—or within a FEMA floodplain—frequently flooded—and, if so, would protect the now identified critical area by denying or placing conditions upon the permit to construct the building.

While arguably other principles of law do not permit regulation that would prohibit an existing legal use, the GMA clearly requires reasonable regulation of critical areas. Assuming, *arguendo*, that a limitation on government's power to prohibit existing uses does exist, neither that law no[r] the language of the statute provide a legal basis by which the County can circumvent the clear directive in RCW 36.70A-.060(2) that it "shall adopt development regulations that protect critical areas . . . ."

. . . .

[T]he exemption provisions with respect to all four critical areas fail to comply with the GMA, specifically RCW 36.70A-.170(1)(d) and .060(2) . . . . Neither courts nor the GMA can dictate to the County the precise formulation for designating critical areas within its boundaries. The GMA recognizes that variations in county size and resources can affect the process which is undertaken and it provides for assistance through the Department of Community Development. It is the process of designation that is of concern of the courts. The law requires that the process be open, deliberative and reasoned. In this case it is the absence of that process and the County's reliance upon exemptions as its substitute that has caused remand of the plan to the County.

Clerk's Papers at 203.

## A. BOARD JURISDICTION

The majority determines RCW 36.70A.250 confers jurisdiction on the Board only over counties subject to the planning requirement of RCW 36.70A.040 located east of the crest of the Cascade Mountains. Because the County does not fall under the comprehensive planning mandate of RCW 36.70A.040, the majority concludes the Board lacked jurisdiction over the County's critical areas decisions without reaching the merits. The majority's analysis makes no sense in light of the Act's plain language or its legislative history. The majority also ignores the controlling language of RCW 36.70A.280(1).

The Act differentiates between counties that adopt comprehensive plans by choice or mandate of the Act from counties who need not adopt comprehensive plans under

the Act's provisions. RCW 36.70A.040. The County is one of the latter counties. But *all* counties must comply with the critical areas mandate of the Act; RCW 36.70A.170 describes the critical areas mandate applicable to *all* counties:

(1) On or before September 1, 1991, *each county, and each city, shall designate* where appropriate:

(a) Agricultural lands that are not already characterized by urban growth and that have long-term significance for the commercial production of food or other agricultural products;

(b) Forest lands that are not already characterized by urban growth and that have long-term significance for the commercial production of timber;

(c) Mineral resource lands that are not already characterized by urban growth and that have long-term significance for the extraction of minerals; and

(d) *Critical areas.*

(2) In making the designations required by this section, counties and cities shall consider the guidelines established pursuant to RCW 36.70A.050.

(Emphasis added.) Moreover, RCW 36.70A.060(2) plainly requires the County to adopt critical areas (as distinct from natural resource areas) and development regulations (albeit at a later date than for counties adopting comprehensive plans consistent with the Act):

*Each county and city shall adopt development regulations that protect critical areas that are required to be designated under RCW 36.70A.170.* For counties and cities that are required or choose to plan under RCW 36.70A.040, such development regulations shall be adopted on or before September 1, 1991. For the remainder of the counties and cities, such development regulations shall be adopted on or before March 1, 1992.

(Emphasis added.)

The confusion over the Board's jurisdiction arises from the language of RCW 36.70A.250 which states:

(1) There are hereby created three growth management hearings boards for the state of Washington. The boards shall be established as follows:

(a) An Eastern Washington board with jurisdictional boundaries including *all counties that are required to or choose to plan under RCW 36.70A.040* and are located east of the crest of the Cascade mountains;

(b) A Central Puget Sound board with jurisdictional boundaries including King, Pierce, Snohomish, and Kitsap counties; and

(c) A Western Washington board with jurisdictional boundaries including all counties that are required or choose to plan under RCW 36.70A.040 and are located west of the crest of the Cascade mountains and are not included in the Central Puget Sound board jurisdictional boundaries. Skamania county, should it be required or choose to plan under RCW 36.70A.040, may elect to be included within the jurisdictional boundaries of either the Western or Eastern board.

*(2) Each board shall only hear matters pertaining to the cities and counties located within its jurisdictional boundaries.*[9]

(Emphasis added.) The majority concludes from the referenced language that *only* counties required or choosing to adopt comprehensive plans pursuant to RCW 36.70A.040 in Eastern Washington are subject to the Board's jurisdiction. Not only does the majority decline to explain how the Act's direction to counties not adopting comprehensive plans to identify critical areas and enact development regulations would be enforced if the Board had no jurisdiction, it fails to seriously address the meaning of RCW 36.70A.280(1) which specifies the subject matter jurisdiction of the Board:

(1) A growth management hearings board shall hear and determine only those petitions alleging either:

---

[9] WAC 242-02-030(1) also explains the Board's jurisdiction:

This section is intended to be general and informational only, and failure to list matters over which a board has jurisdiction at law shall not constitute any waiver of or withdrawal from such jurisdiction.

(1) Geographic jurisdiction. Each board shall hear only those matters pertaining to the cities and counties located within its jurisdictional boundaries. The boundaries are as follows:

(a) The Eastern Washington board includes all counties and the cities now or subsequently located within these counties that are required or choose to plan under RCW 36.70A.040 and are located east of the crest of the Cascade mountains[.]

(a) *That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter*, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW; or

(b) That the twenty-year growth management planning population projections adopted by the office of financial management pursuant to RCW 43.62.035 should be adjusted.

(Emphasis added.)

WAC 242-02-030(2) also addresses subject matter jurisdiction:

Subject matter jurisdiction. Each board shall hear and determine petitions alleging that a state agency, county, or city is not in compliance with the requirements of the act, or chapter 90.58 RCW as it relates to the adoption or amendment of shoreline master programs, or chapter 43.21C RCW as it relates to plans, development regulations, and amendments adopted under the act or chapter 90.58 RCW; or, petitions from cities or the governor relating to an adopted county-wide planning policy; or, that the twenty-year growth management planning projections adopted by the office of financial management pursuant to RCW 43.62.035 should be adjusted.

In creating three growth management hearings boards, the Legislature established a regionally sensitive administrative review process designed to ensure local government's compliance with the Act's requirements. *Torrance v. King County*, 136 Wn.2d 783, 788, 966 P.2d 891 (1998). *See generally* William H. Nielsen et al., *Practice and Procedure Before the Growth Planning Hearings Boards,* 16 U. PUGET SOUND L. REV. 1323, 1324 (1993). As we explained in *Skagit Surveyors & Engineers v. Friends of Skagit County*, 135 Wn.2d 542, 558-59, 958 P.2d 962 (1998), upon a petition for review a Board has subject matter jurisdiction to hear and determine allegations of local government noncompliance with the requirements of the Act.

Insofar as all counties and cities in Washington must designate natural resource lands and critical areas and adopt development regulations to protect critical areas, it makes no sense, as the majority asserts, to say the Board lacks subject matter jurisdiction over a claim that a county has failed to meet its Act-based responsibility. The Boards simply have jurisdiction to consider more than comprehensive plans and other legislative enactments by local governments. This has been generally understood by those evaluating the Act.[10]

The more reasonable understanding of the Act is that RCW 36.70A.250 divides the authority of the boards on a geographical basis; it is not as a limitation on the boards' authority to hear petitions for review of critical areas ordinances adopted pursuant to the Act.

The legislative history of the Act also indicates this intent to treat RCW 36.70A.250 as a geographic division of the Board's authority. Significantly, an analysis of the amendment prepared for the House described the jurisdiction of the three boards as encompassing all Washington counties:

> Sec. 15 Regional Dispute Resolution Boards Created. Three dispute resolution boards are created: (a) An eastern Washington board for counties located east of the Cascade mountains; (b) A northwest Washington board for Whatcom, Skagit, San Juan, Island, Snohomish, King, Pierce, Kitsap, and Thurston counties; and (c) A southwest Washington board for all counties west of the Cascade mountains and are not included in the northwest Washington board . . . .

---

[10] In 1994, the Governor established a Task Force on Regulatory Reform to make recommendations for improvement of the effectiveness of the Act. Exec. Order 93-06 (Aug. 9, 1993). The task force issued recommendations regarding the designation and protection of critical areas. GOVERNOR'S TASK FORCE ON REGULATORY REFORM, FINAL REPORT 37-39 (1994). Its discussion of these recommendations acknowledged the Boards' jurisdiction to review all critical areas regulations adopted under the Act:

> [T]he Legislature declared certain areas to be of statewide interest. All cities and counties are required to adopt development regulations to protect these critical areas. A challenge to a development regulation is handled through an appeal filed with a growth management hearing board. The Boards have the authority to determine whether development regulations comply with the GMA.

*See* page 4 of "Section by Section, Senate Striking Amendment to ESHB 1025" (undated), contained in the House file for Engrossed Substitute House Bill 1025. Moreover, the Final Bill Report on the Act referred to the Boards' geographical jurisdiction which included all counties in the State:

> Three Growth Planning Hearings Boards are created to resolve disputes regarding the GMA. One board is established for Eastern Washington, one for Western Washington, and one for Central Puget Sound (Snohomish, King, Pierce, and Kitsap counties).
>
> The boards hear petitions on whether state agencies, counties, and cities comply with the requirements of the GMA[.]

FINAL B. REP. ESHB 1025, at 5 (Wash. 1991).FINAL LEGISLATIVE REPORT, 52d Wash. Leg., 2d Sp. Sess. (1990) and Reg. Sess. & 1st Sess. (1991).

Thus, in adopting the Act, the Legislature compelled counties like Whitman County to enact critical areas ordinances pursuant to its provisions, and conferred subject matter jurisdiction on the Board to hear appeals claiming county noncompliance of such measures with the Act; the Legislature did not then pull the rug out from under the Board by depriving it of jurisdiction in RCW 36.70A.250. The majority's erroneous interpretation of that statute renders toothless a vital component of the Act—protection of critical areas—in vast portions of the State of Washington.

B. EXISTING USE EXEMPTION TO CRITITCAL AREAS UNDER THE ACT

Turning to the merits of the controversy not addressed by the majority, the Moores contend the County's critical areas ordinances violate the Act by permitting existing uses to continue until such time as those uses change. The County argues this approach is permitted by the language of RCW 36.70A.060(1). The Board agreed with the County, but I disagree.

RCW 36.70A.060(1) applies only to those counties and cities that are required to or choose to adopt comprehensive

plans under the Act. As to those counties, the statute describes the content of the zoning and other development regulations necessary to implement the natural resource areas identified by a county that must adopt or choose to adopt a comprehensive plan subject to the Act:

> Each county that is required or chooses to plan under RCW 36.70A.040, and each city within such county, shall adopt development regulations on or before September 1, 1991, to assure the conservation of agricultural, forest, and mineral resource lands designated under RCW 36.70A.170. Regulations adopted under this subsection may not prohibit *uses legally existing* on any parcel prior to their adoption and shall remain in effect until the county or city adopts development regulations pursuant to RCW 36.70A.040. Such regulations shall assure that the use of lands adjacent to agricultural, forest, or mineral resource lands shall not interfere with the continued use, in the accustomed manner and in accordance with best management practices, of these designated lands for the production of food, agricultural products, or timber, or the extraction of minerals . . . .

RCW 36.70A.060(1). For the counties that enact comprehensive plans under the Act, RCW 36.70A.060(1) requires them to adopt natural resource area protection regulations and allows them to exempt existing uses. The language of RCW 36.70A.060(1), however, has nothing whatsoever to do with critical areas ordinances. RCW 36.70A.060(2), .170(1)(d). Counties may not exempt existing uses in the critical areas ordinances. The Board's interpretation of RCW 36.70A.060 violates the clear directive of subsection (2) that "[e]ach county and city shall adopt development regulations that protect critical areas . . . ." These regulations are unaffected by existing uses.

## CONCLUSION

Critical areas are a vital part of the Growth Management Act. The Legislature directed all local governments to protect from development wetlands, aquifers, fish and wildlife habitat, and areas sensitive to flooding or geological

hazard. The majority today deprives these sensitive areas of any real protection by gutting the Board's authority to enforce the Act in a very large part of Washington State. This court again turns a deaf ear, in the guise of interpreting the Act, to its very reason for existence.

The Legislature in RCW 36.70A.280 gave the Boards jurisdiction over a state agency, county, or city located within its regional boundaries to ensure compliance with the Act's provisions; the Board here had jurisdiction over the County even though the County did not adopt a full comprehensive plan pursuant to the Act.

In this case, the County improperly exempted from its critical areas ordinance existing agricultural, mineral, and forestry land uses. The case should be remanded to the Board to compel the County to comply with the Act.