154 P.3d 959 (2007)
THURSTON COUNTY, Appellant,
v.
WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD and Futurewise (formerly known as 1000 Friends of Washington), Respondents, and
Building Industry Association of Washington, Olympia Master Builders, and People for Responsible Environmental Policies, Appellants-Intervenors.
No. 34172-7-II.
Court of Appeals of Washington, Division 2.
April 3, 2007.
*961 Allen T. Miller, Jeffrey George Fancher, Olympia, WA, Richard L. Settle, Foster Pepper PLLC, Seattle, WA, for Petitioners.
Martha Patricia Lantz, Office of Atty. Gen. Lic. & Admin. Law Div., Olympia, WA, Tim Trohimovich, John T. Zilavy, Futurewise, Seattle, WA, for Respondents.
Russell Clayton Brooks, Brian Trevor Hodges, Pacific Legal Foundation, Bellevue, WA, for Appellant-Intervenors.
ARMSTRONG, J.
¶ 1 Thurston County appeals a Western Washington Growth Management Hearings Board decision that invalidated certain portions of the County's comprehensive plan and development regulations. The Board, acting on 1000 Friends of Washington's challenge to the County's periodic review, found that the County failed to explain why its urban growth areas exceeded projected population growth by 38 percent, improperly designated agricultural land of long-term significance, and failed to create a variety of densities in its rural areas.
¶ 2 The County argues that the Board wrongly decided these issues on the merits arguing that: (1) 1000 Friends of Washington (now Futurewise) did not have standing before the Board because it did not show that any member lived in or owned property in the county, (2) the Board lacked jurisdiction to review land use decisions the County made years earlier and did not revise in its recent update, and (3) the Board lacked jurisdiction to review the County's criteria for designating agricultural land of long-term significance because the County revised this part of its comprehensive plan early and Futurewise did not petition for review within *962 the 60-day period the Growth Management Act allowed.
¶ 3 We conclude that Futurewise had standing before the Board because the legislature granted standing to a "participating" party at the county level and that the legislative grant of such standing does not violate the separation of powers doctrine. We further conclude that the Board had jurisdiction to consider those parts of the County's comprehensive plan that it had not revised in the mandated update, and the Board did not err in finding that the County failed to give sufficient notice of its early review of part of the comprehensive plan.
¶ 4 In addition, we hold that in reviewing the County's criteria for designating agricultural lands of long-term significance, the Board correctly determined that a criterion excluding lands not currently used for agriculture violated the Act, but it erred in concluding that predominant parcel size was an invalid criterion. In reviewing the County's urban growth areas (UGAs), the Board correctly determined that, without explanation from the County as to the rationale, the 38 percent excess land in the UGAs was too large. But in reviewing the County's rural densities, the Board erred in concluding that the County's zoning designations did not provide for a variety of rural densities. Accordingly, we affirm in part and reverse in part.

FACTS
¶ 5 The legislature enacted the Growth Management Act (Act), chapter 36.70A RCW, to minimize the threats that unplanned growth poses to the environment, economic development, and public welfare. RCW 36.70A.010; Diehl v. Mason County, 94 Wash.App. 645, 650, 972 P.2d 543 (1999). The Act encourages development in areas already characterized by urban development, reduction of urban sprawl, and conservation of productive agricultural lands. RCW 36.70A.020.
¶ 6 The Act requires counties with large populations or rapid growth to plan for future growth. RCW 36.70A.040(1). Each county planning under the Act must adopt a comprehensive land use plan and development regulations. RCW 36.70A.040(3). The Act requires counties to "take action to review and, if needed, revise their comprehensive plans and development regulations" in accordance with a set schedule. RCW 36.70A.130(4). Counties may conduct their required reviews before the established time periods and may receive grants if they elect to do so. RCW 36.70A.130(5)(a).
¶ 7 Thurston County is required to plan under the Act. Its first update was due on or before December 1, 2004, with successive updates due every seven years thereafter. RCW 36.70A.130(4)(a). In November 2003, the County adopted a resolution amending its comprehensive plan's Natural Resource Lands and Natural Environment chapters, which designate agricultural lands of long-term significance. The County adopted the update of its comprehensive plan and development regulations in November 2004.[1]
¶ 8 The Thurston County Planning Commission provided for public comment on the update. Futurewise wrote the County regarding its concerns that the comprehensive plan did not provide for a variety of rural densities, contained urban growth areas that were too large, and did not properly classify agricultural lands. Tim Trohimovich[2] testified on behalf of Futurewise before the Commission about these concerns.
¶ 9 In January 2005, Futurewise petitioned the Board for review of the County's comprehensive plan update. The Board concluded that the plan did not comply with the Act because it failed to establish a variety of rural densities, the urban growth areas contained 38 percent more acres than projected demand required through 2025, and two of the County's criteria for designating agricultural resource lands did not comply with RCA 36.70A.060 and .170.
¶ 10 The County sought direct review of the Board's decision in the Supreme Court. The Building Industry Association of Washington, *963 Olympia Master Builders, and People for Responsible Environmental Policies intervened. The Supreme Court transferred the case to this court.[3]

ANALYSIS

I. STANDARD OF REVIEW
¶ 11 The Board adjudicates Act compliance and, when necessary, can invalidate noncompliant comprehensive plans and development regulations. RCW 36.70A.280, .302. The Board must presume that a county's comprehensive plans and development regulations are valid upon adoption. RCW 36.70A.320(1). A challenging petitioner bears the burden of demonstrating that a county's actions do not comply with the Act. RCW 36.70A.320(2). And the Board "shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the Act]." RCW 36.70A.320(3). To find an action "clearly erroneous," the Board must be "left with the firm and definite conviction that a mistake has been committed." King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 552, 14 P.3d 133 (2000) (quoting Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson County, 121 Wash.2d 179, 201, 849 P.2d 646 (1993)).
¶ 12 In reviewing decisions of the Board, we apply the standards of the Administrative Procedure Act (APA) directly to the record before it. King County, 142 Wash.2d at 553, 14 P.3d 133. The party asserting error, in this case the County, has the burden of demonstrating the invalidity of the Board's action. RCW 34.05.570(1)(a); King County, 142 Wash.2d at 553, 14 P.3d 133.
¶ 13 Under the APA, we will reverse an agency decision that is unconstitutional, exceeds the agency's statutory authority or jurisdiction, erroneously interprets or applies the law, is not based on substantial evidence, or is arbitrary or capricious. RCW 34.05.570(3). The County asserts it is entitled to relief under these five grounds.
¶ 14 We review the Board's legal conclusions de novo, giving substantial weight to the Board's interpretation of a statute it administers. City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998). But the Act requires us to give even greater deference to county planning decisions that are consistent with the Act's goals. Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 238, 110 P.3d 1132 (2005). Thus, we do not defer to a Board ruling that fails to give considerable deference to a county's choices in adopting or revising its comprehensive plan. Quadrant Corp., 154 Wash.2d at 238, 110 P.3d 1132. Nonetheless, the Board need not defer to a county decision that is clearly an erroneous application of the Act. Quadrant Corp., 154 Wash.2d at 238, 110 P.3d 1132.
¶ 15 We review the Board's factual findings for substantial supporting evidence, which is "`a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" King County, 142 Wash.2d at 553, 14 P.3d 133 (quoting Callecod v. Wash. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510 (1997)). Where the agency's findings of fact are unchallenged, we consider them verities on appeal. Manke Lumber Co. v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 113 Wash.App. 615, 628, 53 P.3d 1011 (2002).

II. STANDING OF FUTUREWISE
¶ 16 The County challenges Futurewise's standing to petition the Board for review of the County's growth management enactments. The County argues that Futurewise made no showing that Trohimovich or any other member is a resident of or property owner in Thurston County and, thus, did not show actual injury from the County's actions.
A. Standing Under the Act
¶ 17 The Act provides that a person who has participated orally or in writing before a county in the adoption or amendment *964 of a comprehensive plan or development regulations may petition the Board for review of that matter.[4] RCW 36.70A.280(2)(b). The person must show that his or her participation before the County was "reasonably related to the person's issue[s] as presented to the board." RCW 36.70A.280(4). Futurewise submitted a letter to the County, and Trohimovich testified before the County's planning commission on behalf of Futurewise. Both the letter and testimony related to the issues Futurewise presented in its petition to the Board.
¶ 18 The County cites to a 1996 Central Puget Sound Growth Management Hearings Board decision that used the test from Trepanier v. Everett, 64 Wash.App. 380, 382-83, 824 P.2d 524 (1992), to determine whether a petitioner has standing under the Act. But that test is used to determine if a petitioner has APA standing, not participation standing.[5] The Central Puget Sound Growth Management Hearings Board explicitly recognized what it termed "appearance standing" and concluded that one petitioner in that case had both appearance standing and APA standing. Hapsmith v. City of Auburn, No. 95-3-0075c, Cent. Puget Sound Growth Mgmt. Hearings Bd. (Final Decision and Order, October 10, 1996). Under the Act, participation standing and APA standing are distinct. RCW 36.70A.280(2)(b), (d). A person need not meet the requirements of APA standing to have participation standing before the Board.
¶ 19 Because Futurewise's participation before the County related to the issues it presented to the Board, it had standing under the Act to petition the Board for review of the County's decision.
B. Separation of Powers
¶ 20 But the County argues that the legislature's grant of participation standing without a showing of injury-in-fact violates the separation of powers doctrine.
¶ 21 The County asserts that the Act "recognizes that the Board, in effect, is a specialized court," because RCW 36.70A.295 permits petitions for review to be filed with either the Board or the superior court. Br. of Appellant at 34. Thus, the County argues, because the constitution requires a showing of injury-in-fact for standing, Save a Valuable Env't v. City of Bothell, 89 Wash.2d 862, 866-68, 576 P.2d 401 (1978), we should imply an injury-in-fact requirement in RCW 36.70A.280(2) to preserve its constitutionality.
¶ 22 The Board, however, is not a constitutional court. The Washington Constitution authorizes a Supreme Court, Courts of Appeals, and superior courts. WASH. CONST. art. IV, §§ 2, 5, 30. By contrast, the legislature created the growth management hearings boards. RCW 36.70A.250. Legislatively created agencies can act in a quasi-judicial capacity without violating separation of powers principles. ASARCO Inc. v. Air Quality Coal., 92 Wash.2d 685, 696, 601 P.2d 501 (1979) (noting that the separation of powers argument was "considered and rejected by most courts in the early days of administrative practice").
¶ 23 The Board, as a legislative creature, may exercise all the powers its enabling statute confers. Skagit Surveyors & Eng'rs, L.L.C. v. Friends of Skagit County, 135 Wash.2d 542, 558, 958 P.2d 962 (1998). We need look only to the Act itself, not the constitution, to determine whether a person has standing to petition to the Board. Skagit Surveyors, 135 Wash.2d at 558, 958 P.2d 962. And RCW 36.70A.280(2)(b) clearly grants participation standing to Futurewise. The legislature did not transform the Board into a court by allowing parties to file a petition in either the Board or a court. It merely elected, as part of delegating quasi-judicial *965 functions to the Board, to offer litigants the choice of a judicial forum.
¶ 24 The Board did not err in finding that Futurewise had standing to petition it for review of the County's actions.

III. SCOPE OF BOARD REVIEW
A. Review of Unchanged Portions of Comprehensive Plan and Development Regulations
¶ 25 The County contends that the Board erred in reviewing the portions of its updated comprehensive plan and development regulations that the County did not amend in its periodic review. It asserts that permitting the Board to review all plan provisions and regulations regardless of whether the County amended them would create an "open season" to challenge comprehensive plans and development regulations every seven years. Br. of Appellant at 35.
¶ 26 The County reasons that Board review of unchanged provisions violates RCW 36.70A.290(2), which requires that all petitions challenging the adoption or amendment of a comprehensive plan or development regulation be filed within 60 days after the County publishes notice of adoption.[6] Further, according to the County, allowing such reviews violates Washington's strong public policy in favor of finality in land use decisions. See Skamania County v. Columbia River Gorge Comm'n, 144 Wash.2d 30, 49, 26 P.3d 241 (2001).
¶ 27 RCW 36.70A.130(1)(a) requires the County to revise its land use plan and development regulations if necessary to "ensure the plan and regulations comply with the requirements of [the Act]." And RCW 36.70A.280(1)(a) provides that the Board can review petitions alleging that a County "is not in compliance with the requirements of [the Act]." The Board held that RCW 36.70A.130(1)(a) imposes a duty on the County to bring its plan and regulations into compliance with the Act, including any amendments to the Act enacted since the County adopted the plan and regulations under review. The Board noted that the County had enacted its comprehensive plan before the 1997 amendments to the Act added requirements for limited areas of more intensive rural development and that Futurewise was challenging this component of the plan.
¶ 28 Neither RCW 36.70A.280(1) nor RCW 36.70A.130(1)(a) explicitly grants the Board authority to review petitions alleging that a county's failure to amend a comprehensive plan or development regulations during its periodic review violates the Act. But the Supreme Court has said that RCW 36.70A.280 "authorizes a hearings board to determine whether actionsor failures to acton the part of a county comply with the requirements of the Growth Management Act." Skagit Surveyors, 135 Wash.2d at 558-59, 958 P.2d 962.
¶ 29 Moreover, the County's interpretation would undermine the purpose of requiring periodic reviews. The County could avoid complying with the Act by showing that it had adopted its plan before the Act's amendment. And while finality in land use decisions is important, by requiring review of comprehensive land use plans and development regulations every seven years, the legislature has determined that, in managing growth, the benefits to the public of keeping abreast of changes in the law outweigh the benefits of finality to landowners. In the purpose statement for an amendment authorizing more time for counties to complete updates, the legislature recognized that the update requirement involves significant compliance efforts by local governments, but added that it is "an acknowledgement of the continual changes that occur within the state, and the need to ensure that land use measures reflect the collective wishes of its citizenry." H.B. 2171, 59TH LEG., Reg. Sess. § 1 (Wash.2005).
¶ 30 In its reply brief, the County suggests that, if we conclude that the Board can review unchanged provisions of a county's comprehensive plan and development regulations, *966 we should limit such review to those provisions that arguably do not comply with stricter Act requirements enacted after adoption of the challenged provisions. Under this rule, the Board would not have jurisdiction to review any of the unchanged provisions Futurewise challenged in this case because the legislature has not amended the underlying Act requirements since the County enacted the unchanged provisions.
¶ 31 The County's proposal would require the Board to determine whether an amendment to the Act made a requirement "stricter" or merely changed it. The County does not define "stricter." We presume that it would be an amendment to the Act that requires the County to more strictly regulate an owner's land use. If so, and the legislature amended the Act to mandate what might be arguably less strict land use controls, the County would not be obligated to revise its comprehensive plan in accordance with the amendment. Thus, a land owner could not challenge a county's failure to relax its land use controls under the Act's amendments. We doubt that the legislature intended such an uneven result. We also question whether the legislature intended to burden the Board with the threshold jurisdictional question of whether an Act amendment is stricter, less strict or somewhere in between what the Act required before the amendment. Finally, the Board did not see fit to impose such a limitation on its review of periodic updatesan interpretation we give considerable deference. City of Redmond, 136 Wash.2d at 46, 959 P.2d 1091. We conclude that the Board did not err in interpreting RCW 36.70A.130 to allow the Board to review unchanged portions of the County's comprehensive plan and development regulations.
B. Review of Recently Amended Provisions
¶ 32 In a related argument, the County argues that the Board did not have subject matter jurisdiction to review the County's criteria for designating agricultural lands of long-term significance because the County updated that portion of its comprehensive plan in 2003 and no person filed a petition challenging that part of the County's update within 60 days after its adoption. The County maintains that it elected to conduct an early review of the Natural Resource Lands and Natural Environment chapters of its comprehensive plan, containing the agricultural lands designation criteria, as permitted by RCW 36.70A.130(5)(a) and that this action met all the requirements of RCW 36.70A.130.
¶ 33 The Board found that the 2003 amendments were not part of the County's 2004 update because, in adopting the 2003 amendments, the County did not make a finding that a review and evaluation had occurred and did not state the reasons it decided not to revise the criteria as RCW 36.70A.130 required.
¶ 34 RCW 36.70A.130(1)(a) requires counties to take "legislative action" to review and, if needed, revise their comprehensive plans and land use regulations according to the time periods specified in subsection (4). RCW 36.70A.130(1)(b) defines "legislative action" as "the adoption of a resolution or ordinance following notice and a public hearing indicating at a minimum, a finding that a review and evaluation has occurred and identifying the revisions made, or that a revision was not needed and the reasons therefor." The County's November 2003 resolution provided that its amendments brought the Natural Resources Lands chapter in compliance with the Act, but it did not refer to RCW 36.70A.130, did not make a finding that it was an "update" within the meaning of that statute, and did not state the reasons it did not revise the agricultural lands designation criteria.[7] Administrative Record (AR) at 1850.
¶ 35 The County argues that the definition of "legislative action" in RCW 36.70A.130(1)(b) applies to counties not planning under RCW 36.70A.040, which does not include Thurston County.[8]
*967 ¶ 36 Subsection (1)(b)'s first sentence begins, "Except as otherwise provided, a county or city not planning under RCW 36.70A.040 shall take action. . . ." RCW 36.70A.130(1)(b). The second sentence contains the definition of legislative action. But the phrase "legislative action" appears only in subsection (1)(a),[9] which applies to Thurston County and all other counties planning under RCW 36.70A.040, and the reference to "legislative action" in (1)(b) can apply only to (1)(a), not the first sentence in (1)(b). The Board correctly applied the subsection (1)(b) definition of legislative action to the County's 2003 amendment.
¶ 37 The Board did not err in finding that the 2003 amendment was not part of the County's periodic update. The Act distinguishes between required periodic reviews and other amendments to comprehensive plans and development regulations. RCW 36.70A.130(2) requires counties to create public participation programs that identify procedures and schedules "whereby updates, proposed amendments, or revisions of the comprehensive plan are considered by the governing body." (Emphasis added.) To "update" means to "review and revise, if needed, according to subsection (1) of this section, and the time periods specified in subsection (4) of this section or in accordance with the provisions of subsections (5) or (8) of this section." RCW 36.70A.130(2)(a). Subsection (1) contains the definition of legislative action. RCW 36.70A.130(1)(b). Subsection (4) requires updates every seven years. RCW 36.70A.130(4). An amendment that does not meet the requirements of both subsection (1) and subsection (4) is not an update. Otherwise, as the Board noted, a county could argue after the fact that an amendment was actually part of an update to its comprehensive plan and thereby circumvent review of a decision not to revise a plan or regulations.
¶ 38 In addition, Futurewise did not petition the Board for review of the 2003 resolution amending the agricultural lands criteria. Rather, it challenged the County's 2004 up-date of its comprehensive plan, arguing that the County should have revised the agricultural lands designation criteria to comply with the Act. The Board stated that the County's argument "confuses an appeal of the designation criteria adopted in November 2003 with an appeal of the County's failure to revise those criteria as needed to comply with the Growth Management Act in its 2004 update." AR at 2601.
¶ 39 Accordingly, the Board did not err in reviewing the County's criteria for designating agricultural lands of long-term significance.
C. Review of Urban Growth Areas Previously Upheld
¶ 40 The County also argues that the Board did not have authority to review the County's UGAs because the Board upheld the Olympia UGA in 1995. The County asserts that the principles of stare decisis, res judicata, and collateral estoppel prevent "relitigation of County UGA policy choices made in 1994." Br. of Appellant at 44.
¶ 41 The Board reviewed a challenge to the UGA for the city of Olympia in 1995. In that case, the Board upheld the county's population projections through 2005 and its land capacity analysis. Reading v. Thurston County, No. 94-2-0019, W. Washington Growth Mgmt. Hearings Bd. (Final Order, March 23, 1995). Although it found that the Olympia UGA was too large, the Board declined to invalidate the Olympia UGA because the county had not yet adopted UGAs for Lacey or Tumwater, cities adjoining Olympia. Reading, No. 94-2-0019.
¶ 42 The County's argument is flawed for two reasons. First, as the Board noted, the County has not shown that it meets the requirements of any of the doctrines it invokes. Futurewise was not a party to or in privity with a party to the Reading case, a requirement for res judicata and collateral estoppel. See Hadley v. Maxwell, 144 Wash.2d 306, 311-12, 27 P.3d 600 (2001); Alishio v. Dep't of Soc. & Health Servs., 122 *968 Wash.App. 1, 7, 91 P.3d 893 (2004). And the County presented no authority to support its argument that the doctrine of stare decisis applies.
¶ 43 Second, Futurewise is challenging the County's actions in its 2004 update, not its original 1994 enactment. The Reading decision evaluated only the Olympia UGA, which it found to be too large. Reading, No. 94-2-0019. The County has adopted UGAs for Lacey, Tumwater, and other cities throughout the county over the past decade. It amended the Tenino and Bucoda UGAs as part of its 2004 update. And the Reading decision was based on population projections through 2015. Reading, No. 94-2-0019. The County's 2004 update used projections through 2025, a time period not contemplated at the time of the County's 1994 action.
¶ 44 The County cites Montlake Community Club v. Central Puget Sound Growth Management Hearings Board, 110 Wash. App. 731, 43 P.3d 57 (2002), for the proposition that the Board erred in reviewing the County's UGAs. In that case, Division One held that a petition for review of a city's subarea plan was untimely when the plan merely implemented, but did not amend, the city's comprehensive plan, enacted four years earlier. Montlake Cmty. Club, 110 Wash. App. at 739-40, 43 P.3d 57. But the case did not address an update under RCW 36.70A.130. And here, the County did not merely implement a plan already in place at the time of the Reading decision; rather, it updated its plan based on new population projections with a new planning horizon of 2025.
¶ 45 Accordingly, the Board did not err in reviewing the County's UGAs.

IV. AGRICULTURAL LANDS OF LONG-TERM COMMERCIAL SIGNIFICANCE
¶ 46 The County asserts that, even if the Board had jurisdiction to review its designation criteria for agricultural lands of long-term commercial significance, the Board erred in invalidating two of its criteria.
¶ 47 RCW 36.70A.030(2) defines "agricultural land" as land "primarily devoted to" commercial production of various agricultural products. A comprehensive plan must designate agricultural lands of long-term commercial significance. RCW 36.70A.050, .170(1)(a). In making this designation, counties must consider guidelines established by the Department of Community, Trade, and Economic Development. RCW 36.70A.170(2). The Department has promulgated WAC 365-190-050, requiring counties to consider, among other things, the possibility of more intense uses of the land. This regulation provides 10 factors for counties to consider in evaluating that possibility. WAC 365-190-050(1)(a)-(j).
¶ 48 Among its nine criteria for designating agricultural land of long-term significance, the County included (1) predominant parcel size, requiring that parcels be 20 acres or more, which "provides economic conditions sufficient for managing agricultural lands for long-term commercial production"; and (2) existing land use, requiring that "[d]esignated agricultural lands should include only [those] areas [that are] used for agriculture." AR at 436.
¶ 49 The Board concluded that these two criteria did not comply with the Act's requirements for designating of agricultural lands of long-term commercial significance.
A. Parcel Size
¶ 50 The County first argues that the Board erred in invalidating its parcel size criterion because WAC 365-190-050(1)(e) permits the County to use parcel size as a criterion and there is no requirement that it use farm size.
¶ 51 The Board invalidated this criterion because parcel size does not necessarily correlate to farm size; an economically viable farm may consist of several smaller parcels under common ownership or use. The Board reasoned that parcel size "is just one in many factors to consider on the question of the possibility of more intense uses of the land." AR at 2567.
¶ 52 Counties may consider the factors enumerated in WAC 365-190-050(1) in determining whether lands have long-term commercial significance. Lewis County v. W. Wash. Growth Mgmt. Hearings Bd., 157 *969 Wash.2d 488, 502, 139 P.3d 1096 (2006). WAC 365-190-050(1)(e) specifically includes predominant parcel size as an indicator of the possibility of more intensive uses of land. The Board itself stated that parcel size is a factor determining long-term commercial significance of land. The County maintains that it did not rely solely on parcel size; it uses eight other criteria for making this determination, many of them also drawn from WAC 365-190-050(1).
¶ 53 The Board reasoned that "[u]sing predominant parcel size of 20 acres as a designation criterion may exclude viable farms in which the total acreage farmed is in excess of 20 acres in size but each of the parcels making up the farm is less than 20 acres." AR at 2567. While this may be possible, Futurewise did not prove that the County would exclude such land from a farming designation solely on the basis of parcel size. And Futurewise does not contest the County's claim that it uses eight other criteria from WAC 365-190-050(1) to designate farm land. Nor did Futurewise prove that the County's use of parcel size rather than total farm size would significantly change the amount of farm land the County designated. We conclude that the County's use of parcel size as one criteria for designating farm land falls easily within the bounds of the County's legislatively granted discretion.
¶ 54 The Board erred in invalidating the parcel size criterion.
B. Current Use
¶ 55 The County next argues that the Board erred in invalidating its actual land use criterion.[10] Br. of Appellant at 42. The County asserts that the Board applied mere dicta from the Supreme Court majority opinion in City of Redmond, 136 Wash.2d at 53, 959 P.2d 1091, and argues that Justice Sanders's concurring opinion that the plain language of RCW 36.70A.030 requires current use as a criterion is more persuasive.
¶ 56 The City of Redmond majority stated: "We hold land is 'devoted to' agricultural use under RCW 36.70A.030 if it is in an area where the land is actually used or capable of being used for agricultural production." City of Redmond, 136 Wash.2d at 53, 959 P.2d 1091. It then stated, in a footnote responding to Justice Sanders's concurrence,[11] that this definition of agricultural land was not dicta and, as "`a deliberate expression of the court upon the meaning of the statute' should not be disregarded." City of Redmond, 136 Wash.2d at 53 n. 7, 959 P.2d 1091 (quoting State v. Nikolich, 137 Wash. 62, 66, 241 P. 664 (1925)). The court has since relied on this rule. Lewis County, 157 Wash.2d at 502, 139 P.3d 1096 (holding that agricultural land is land used or capable of being used for production); King County, 142 Wash.2d at 559, 14 P.3d 133 (noting City of Redmond's emphasis on maintaining and enhancing agricultural land).
¶ 57 The Board correctly applied the Supreme Court's definition of agricultural land. Under this definition, the County's actual land use criterion, without the additional "or capable of being used for agricultural production," was clearly erroneous and the Board did not err in invalidating it.

V. INVALIDATION OF URBAN GROWTH AREAS
¶ 58 The County argues that, even if the Board had jurisdiction to review its UGAs, it erred in concluding that the UGAs are too large. Intervenors join the County's challenge to the Board's invalidation of the County's UGAs.
¶ 59 Counties must designate UGAs within which they can encourage urban growth and outside of which growth can occur only if it is not urban in nature. RCW 36.70A.110(1). Comprehensive plans must designate UGAs sufficient to permit the urban growth projected over the succeeding 20-year period. RCW 36.70A.110(2). A UGA "may include a reasonable land market supply factor. . . . In determining this market factor, cities and *970 counties may consider local circumstances. Cities and counties have discretion in their comprehensive plans to make many choices about accommodating growth." RCW 36.70A.110(2).
¶ 60 The County projected that demand for residential urban lands in 2025 would be 11,582 acres. It allocated 18,789 acres for this use. This projection leaves 7,205 acres, or approximately 38 percent of available residential lands, unused at the end of the current 20-year planning period. But the County did not state in its comprehensive plan that it used a 38 percent market factor to increase the amount of acreage needed to accommodate growth or explain or justify the use of a market factor.
¶ 61 The County asserts that its use of a 38 percent market factor was reasonable, that it based the factor on local circumstances, and that the factor was within the local discretion permitted by RCW 36.70A.110(2). Although this argument seems to bring the County's action within the "broad range of discretion" that the Act grants to counties in planning for growth, RCW 36.70A.3201, the argument fails. In Diehl, 94 Wash.App. at 654, 972 P.2d 543, we rejected another county's use of a 50 percent market factor in part because that county did not explain why this market factor was required or how the county reached it. Here, the Board found that the County did not state that it was using a market factor or provide the reasons why one was necessary. These unchallenged findings are verities on appeal. Manke Lumber, 113 Wash.App. at 628, 53 P.3d 1011. While the County's market factor is smaller than the one we rejected in Diehl, the County nevertheless failed to meet the requirements for using a market factor.
¶ 62 The County further argues that the Act imposes no requirement regarding maximum size limitations on UGAs but requires only that UGAs be large enough to accommodate projected growth. Again, our Diehl decision controls. In Diehl, we considered a claim that the County had used population projections that exceeded the statutory range, resulting in UGAs that were too large. We pointed to one of the Act's goals, to "`[r]educe the inappropriate conversion of undeveloped land into sprawling, low-density development.'" Diehl, 94 Wash.App. at 653, 972 P.2d 543 (quoting RCW 36.70A.020(2)). Permitting counties to inflate the size of their UGAs would be contrary to this goal. Diehl, 94 Wash.App. at 653, 972 P.2d 543. And "[l]ocal discretion is bounded . . . by the goals and requirements of the [Act]." King County, 142 Wash.2d at 561, 14 P.3d 133. Although the County in Diehl used oversize population projections and the County here used a large market factor, the result is the same.
¶ 63 The County and Intervenors also argue that the Board exceeded its statutory authority by imposing a bright-line rule allowing only a 25 percent market factor. But the Board did not impose such a rule. The Board referred to a 25 percent market factor in explaining the parties' positions, citing to Futurewise's brief.[12] The Board concluded only that the County's UGA boundaries "significantly exceed[ed]" the projected demand for urban residential lands, and that without designating the excess as market factor and explaining the need for it, the County's expansion of its UGAs failed to meet GMA goals. AR at 2573.
¶ 64 Finally, Intervenors argue that the Board erred by using land use figures from 2000 to calculate projected growth over the 20-year period from 2005 to 2025. The Board based its findings on the County's own figures that it used in its comprehensive land use plan. Because no party raised this issue before the Board, we decline to review it. RCW 34.05.554.
¶ 65 Accordingly, the Board did not err in finding that the County's UGAs did not comply with RCW 36.70A.110(2).

VI. FAILURE TO PROVIDE FOR A VARIETY OF RURAL DENSITIES
¶ 66 The County's final contention is that, even if the Board had jurisdiction to review *971 its rural densities, the Board erred in concluding that the County did not provide for a variety of rural densities.
¶ 67 The Act requires counties to identify and protect rural lands not designated for urban growth, agriculture, forest, or mineral resources. RCW 36.70A.070(5). The rural element of a comprehensive plan must permit rural development[13] and provide for "a variety of rural densities." RCW 36.70A.070(5)(b). Counties may provide for a variety of rural densities by means of "clustering, density transfer, design guidelines, conservation easements, and other innovative techniques that will accommodate appropriate rural densities and uses that are not characterized by urban growth and that are consistent with rural character."[14] RCW 36.70A.070(5)(b). The Board considers a density of not more than one dwelling unit per five acres to be rural.[15]
A. Specific Zoning Densities
¶ 68 The County's comprehensive plan allocates almost 400,000 acres of land for "rural use." AR at 774-75. Of this, 39.3 percent is designated for resource use (densities from one dwelling unit per 20 acres to one dwelling unit per 80 acres), 48.3 percent for rural resource and residential (density of one dwelling unit per five acres), and 5.5 percent for rural and suburban residential (densities from one dwelling unit per two acres to four units per acre).[16] The remainder is designated for public parks and trails, military and institutional use, and rural commercial and industrial use.
¶ 69 The County maintains that the densities in its resource use allocation provide a variety of rural densities. But the resource use allocation, although included in the plan's "rural use" section, includes the County's forest lands of long-term significance and agricultural lands of long-term significance. Yet rural lands are those lands "not designated for urban growth, agriculture, forest, or mineral resources." RCW 36.70A.070(5). Thus, the County erred by including these densities as rural densities. The Board did not err in finding that these densities do not contribute to a variety of rural densities.
¶ 70 Next, the County and Intervenors assert that the County's designation of densities of one dwelling unit per two acres, one unit per acre, two units per acre, and four units per acre provide the requisite variety of rural densities. They contend that the Board exceeded its authority in imposing a "bright-line" rule that rural densities must be at least one dwelling unit per five acres.[17] *972 Br. of Intervenors at 45. They essentially argue that densities ranging from one dwelling unit per two acres to four dwelling units per acre in the County's rural zone constitute a variety of rural densities.
¶ 71 The County, however, conceded at oral argument before the Board that densities greater than one dwelling unit per five acres are not "rural densit[ies]" unless they are part of a limited area of more intensive rural development (LAMIRD).[18] Report of Proceedings (RP) at 98-99. The County did not properly designate these areas as LAMIRDs. Therefore, the Board did not err in excluding these densities from the rural densities in the County's comprehensive plan and development regulations.
¶ 72 Excluding densities in agricultural and forest lands and densities more intense than one dwelling unit per five acres, the only rural density the comprehensive plan and development regulations provide for, through specific zoning, is one dwelling unit per five acres. Intervenors argue that owners of land zoned as one unit per five acres may not actually develop their land, thus providing a variety of rural densities. But this argument relies on the choices of individual citizens, not planning under the Act.
¶ 73 The Board did not err in concluding that the County's plan and regulations do not provide a variety of rural densities through its zoning designations.
B. Innovative Techniques
¶ 74 The County and Intervenors also argue that the County has provided for a variety of rural densities through the use of "innovative techniques" as permitted by RCW 36.70A.070(5)(b). Br. of Appellant at 49; Br. of Intervenors at 42. The County asserts that it uses clustering, density transfer, design guidelines, conservation easements, and other techniques. The County cites two findings from its resolution adopting the 2004 update, both of which refer to a variety of rural densities and the use of various innovative techniques.
¶ 75 The Board stated that where a plan's rural designations and zones do not expressly provide for a variety of rural densities, the plan must demonstrate how innovative techniques create a variety of rural densities. The Board found that the County's comprehensive plan failed to make such a demonstration. It thus concluded that the plan did not provide for a variety of rural densities.
¶ 76 The Act imposes a highly deferential standard for board review of comprehensive plans and development regulations. RCW 36.70A.3201. The Board must presume that a county's comprehensive plans and development regulations are valid upon adoption, RCW 36.70A.320(1), and must find compliance unless it determines that the plan or regulations are clearly erroneous. RCW 36.70A.320(3). But on this issue, the Board required the County to show that its plan and regulations were valid. In doing so, the Board failed to presume validity and failed to require Futurewise to prove invalidity. RCW 36.70A.320(2). Accordingly, the Board erred in finding that the County's comprehensive plan and development regulations fail to provide for a variety of rural densities through innovative techniques.
¶ 77 In conclusion, we hold that Futurewise, as a participant before the County, had *973 standing before the Board and that the Board had jurisdiction to consider both revised and unrevised portions of the County's comprehensive plan and regulations. We affirm the Board's decision invalidating the County's current use criterion in designating farm land and the Board's decision invalidating the County's urban growth area designations. But we reverse (1) the Board's invalidation of the County's parcel size criterion for designating agricultural lands of long-term significance and (2) the Board's finding that the County failed to provide for a variety of rural densities through the use of innovative techniques. We remand to the Board.
We concur: HOUGHTON, C.J., and HUNT, J.
NOTES
[1] At the time it filed its opening brief, the County had yet to complete the update of its critical areas ordinance.
[2] Trohimovich is apparently not a resident of or property owner in Thurston County.
[3] The Board, designated as a party to this appeal because its decision is the subject of review, has not presented a brief or participated in the oral arguments presented to this court.
[4] RCW 36.70A.280(3) defines a "person" as "any individual, partnership, corporation, association, state agency, governmental subdivision or unit thereof, or public or private organization or entity of any character."
[5] RCW 36.70A.280(2)(d) provides that a person "qualified pursuant to RCW 34.05.530" has standing before a growth management hearings board. RCW 34.05.530, the APA's standing provision, provides that a person who is "aggrieved or adversely affected by the . . . agency action" has standing and sets forth a definition of "aggrieved or adversely affected." Thus, a person can have standing in the traditional APA sense or participation standing under the Act.
[6] Futurewise asserts that the County did not raise this issue before the Board and that, under RCW 34.05.554, we should not consider the issue. The County did make this argument with respect to the County's review of its urban growth areas. The Board ruled on this issue in its order on motions to dismiss. Thus, we address the issue.
[7] The parties disagree about whether the County properly published a notice of the resolution adopting the 2003 amendments and whether this notice is part of the record on appeal. However, because we hold that the 2003 amendments were not part of the County's 2004 update, this dispute is not relevant to this issue.
[8] Thurston County is required to plan under RCW 36.70A.040.
[9] The first sentence of RCW 36.70A.130(1)(b) does not use the term "legislative action," but does use the term "action."
[10] Actual use is not one of the criteria for determining the possibility of more intense use of land set forth in WAC 365-190-050(1).
[11] Justice Sanders asserted that the majority's definition was not required to decide the case and was therefore dicta. City of Redmond, 136 Wash.2d at 59, 959 P.2d 1091 (Sanders, J., concurring).
[12] The 25 percent market factor also appears in the Board's issue statements, but these are taken verbatim from Futurewise's petition.
[13] "Rural development" means "development outside the urban growth area and outside agricultural, forest, and mineral resource lands designated pursuant to RCW 36.70A.170." RCW 36.70A.030(16).
[14] "Rural character" means:

the patterns of land use and development established by a county in the rural element of its comprehensive plan:
(a) In which open space, the natural landscape, and vegetation predominate over the built environment;
(b) That foster traditional rural lifestyles, rural-based economies, and opportunities to both live and work in rural areas;
(c) That provide visual landscapes that are traditionally found in rural areas and communities;
(d) That are compatible with the use of the land by wildlife and for fish and wildlife habitat;
(e) That reduce the inappropriate conversion of undeveloped land into sprawling, low-density development;
(f) That generally do not require the extension of urban governmental services; and
(g) That are consistent with the protection of natural surface water flows and ground water and surface water recharge and discharge areas.
RCW 36.70A.030(15)(a)-(g).
[15] The Supreme Court has referred to a density of one dwelling unit per five acres as "a decidedly rural density." Skagit Surveyors, 135 Wash.2d at 571, 958 P.2d 962.
[16] Futurewise, without filing a cross-appeal, assigns error to the Board's findings of fact related to the percentages of rural lands zoned as certain densities. A prevailing party need not file a cross-appeal if it seeks no further affirmative relief and merely argues additional grounds to support the decision under review. State v. Kindsvogel, 149 Wash.2d 477, 481, 69 P.3d 870 (2003). Because Futurewise seeks affirmative relief by asking us to modify the decision under review, we decline to consider the issue. RAP 2.4(a).
[17] Futurewise asserts that neither the County nor Intervenors raised this issue before the Board and that, under RCW 34.05.554, this court should not consider the issue. The County did argue, in its prehearing brief, that densities less than one dwelling unit per five acres contributed to its variety of rural densities.
[18] The County made this concession in the following exchange:

[Board Member] Ms. Hite: Well, would you agree that those densities [one dwelling unit per two acres, one unit per one acre, and two units per one acre] are more intense than a rural density?
[Counsel for the County] Mr. Miller: I think we would concede that, yes.
Ms. Hite: So the County's not arguing that a minimum rural densityI guess maximum rural density is 1:5, 1 dwelling unit per 5 acres. Mr. Miller: We would concede that rural densities arethat 1:5 is a rural density.
Ms. Hite: And that more intense than 1:5 is not a rural density, unless it was a more intense rural development.
Mr. Miller: Right.
Ms. Hite: Under 36.70A.070, Sub 5, Sub d, which is the LAMIRD provisions [sic] of the act.
Mr. Miller: Right.
RP at 98-99.