IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CITY OF KENNEWICK, | ) | |
| | ) | No. 37800-4-III |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FUTUREWISE, a Washington nonprofit | ) | UNPUBLISHED OPINION |
| corporation; BENTON COUNTY, | ) | |
| political subdivision of the State of | ) | |
| Washington; and GROWTH | ) | |
| MANAGEMENT HEARINGS BOARD, | ) | |
| an administrative agency of the State of | ) | |
| Washington, | ) | |
| | ) | |
| Respondents. | ) | |

SIDDOWAY, A.C.J. — The City of Kennewick (City) appeals a final decision and order of the Eastern Washington Growth Management Hearings Board (Board). The Board concluded that Benton County's (County's) expansion of the City's urban growth area (UGA) was noncompliant with the Growth Management Act, chapter 36.70A RCW (GMA), by failing to comply with RCW 36.70A.110, .115, and .020(2). The Board based its findings and conclusions on the County's failure to "show its work" as to how the UGA expansion corresponded to the Office of Financial Management's (OFM) population growth projections. A majority of the Board rejected the City's argument that

the Board's proceedings became moot when the City annexed the area that had been added to its UGA.

We hold that the Board's "show your work" requirement was improperly applied where the petitioner, Futurewise, did not present a prima facie challenge to the results of a City land capacity analysis on which the County relied in adopting the expanded UGA. Because the Board's finding that the County failed to show its work is the sole basis on which it found failures to comply with the GMA, its decision and order ignores the presumption of validity and shifts the burden of proof. We reverse the Board's findings of noncompliance and its remand order for this reason, and need not reach the contested issue of whether the City's annexation rendered proceedings moot.

FACTS AND PROCEDURAL BACKGROUND

The City of Kennewick is the largest of five cities located within Benton County. It is located along the southwest bank of the Columbia River, just southeast of the confluence of the Columbia and Yakima rivers and across from the confluence of the Columbia and Snake rivers. Interstate 82, a four-lane divided highway, runs parallel to its southwest border; southwest of that lies unincorporated Benton County.

*Application for and approval of a UGA expansion*

As far back as 2012, the City viewed it as desirable to identify and obtain land use development approval for industrial use land that would enjoy easy access to the Interstate 82 corridor. In 2013 and 2014, the City applied to expand its UGA by 1,263

2

acres to the south and retract its easternmost UGA by 240 acres. Its request to remove the 240 acres was approved, but its request to expand to the south was ultimately unsuccessful. *Futurewise v. Benton County*, No. 14-1-0003, 2014 WL 7505300 at *1 (E. Wash. Growth Mgmt. Hr'gs Bd. Oct. 15, 2014).

The County's next UGA application period was set for the fall of 2018, and the City at that point applied to the County to increase the City's UGA by adding 279.53 acres of land adjacent to and southwest of the City. The land was vacant and designated rural remote under the comprehensive plan. The City proposed that the land be designated industrial.

The City's application to expand its UGA gave, as its reason, that "[w]ith the 2037 population projection of 112,044, it is expected that Kennewick will need an additional 1,000 acres to accommodate an additional 32,924 residents," and the City's land capacity analysis indicated there would be shortage of land for parks, public facilities, schools, industrial uses, open space and public service uses within the City's UGA. Clerk's Papers (CP) at 660. The 2037 population projection was material because the GMA requires that a county's UGA is to be "[b]ased upon the growth management population projection made for the county by the [OFM]." RCW 36.70A.110(2).

The City explained its interest in developable industrial land to "provide employment opportunities now and into the future that will diversify its economy," providing the following history:

3

> In 2016 Kennewick commissioned ECONorthwest to complete a regional industrial lands analysis in order to get a better sense of what types of industrial lands exist within the Tri-Cities region. The study found that while "the region has a large amount of vacant or underutilized industrial zoned land . . . there are few large desirable sites ready for development in the region (*City of Kennewick Industrial Zoned Land Assessment*, 2016, pg. 3). Over the last 2 years the City of Kennewick has received 15 requests for Information from the Washington State Department of Commerce for industrial lands meeting certain criteria. Of those 15, Kennewick was not able to respond to 10 of them. The characteristic that was common to each of those 10 requests was the acreage. Other limiting factors included the lack of appropriately zoned industrial lands near an Interstate and the lack of large parcels zoned for heavy industrial activities.

CP at 660.

Among materials submitted in support of the City's UGA expansion application was a 2018 UGA Information Spreadsheet, identified by the City as page 5 of its *Updated Land Capacity Summary 2018* (Nov. 14, 2018). This is one of a handful of key documents that the parties and Board members referred to repeatedly in proceedings below, often citing them by the "IR" (index of records) or "Tab" number used to locate documents in the administrative record. To assist the reader in following record references, we include the IR/Tab number citations for these key records.

The 2018 UGA Information Spreadsheet, IR/Tab 179, is set forth below. The "uniform formula" identified in the "Needs" column is provided for by the County's Countywide Planning Policy (CPP) #4. CPP #4 provides that the "[UGA] of each City shall be based upon official and accepted population projections for minimum [sic] of 20 years." CP at 646. The "uniform formula" requires the jurisdictions within the County to

take into consideration a total of 11 categories and adjustments (identified as "A" through "K") in arriving at the jurisdiction's land area needs. CP at 647.

**City of Kennewick**
**2018 UGA Information Spreadsheet**

| Existing Per Capita | Use Category | Total | Developed | Vacant/ Underdeveloped Lands | Needs | Surplus/Deficit |
|---|---|---|---|---|---|---|
| 0.0503 | Residential | 10,477.5 | 6,356.4 | 4,121.1 | 2,645.1 | 1476.0 |
| 0.0xxx | Low Density Residential | 8,206.1 | 4,815.2 | 3,390.9 | 2,003.7 | 1387.2 |
| 0.0142 | Medium Density Residential | 1,842.7 | 1,126.0 | 716.7 | 468.6 | 248.1 |
| 0.0052 | High Density Residential | 428.8 | 415.1 | 13.5 | 172.7 | -159.2 |
| 0.0031 | Parks and Recreation | 241.9 | 241.9 | 0.0 | 100.7 | -100.7 |
| 0.0041 | Public Facilities | 324.5 | 324.5 | 0.0 | 135.0 | -135.0 |
| 0.0025 | Schools | 280.8 | 237.5 | 43.3 | 80.8 | -37.5 |
| 0.01687 | Commercial | 1,982.1 | 1,335.1 | 647.0 | 555.6 | 91.4 |
| 0.0334 | Industrial | 787.5 | 462.3 | 325.2 | 1,099.7 | -774.5 |
| 0.0188 | Open Space | 1,564.1 | 1,564.1 | 0.0 | 650.9 | -650.9 |
| 0.0010 | Public Service | 77.2 | 77.2 | 0.0 | 12.4 | -12.4 |
| | subtotal | 15,735.6 | 10,599.0 | 5,136.6 | 5,280.1 | -143.5 |
| | Residential Buildout 70% | | | | 1,236.3 | -1236.3 |
| | Market Factor 25% | | | | 253.9 | -253.9 |
| | Critical Areas | | | | 259.0 | -259.0 |
| | Total | 15,735.6 | 10,599.0 | 5,136.6 | 7,029.3 | -1692.7 |

CP at 839 (IR/Tab 179).[1] The "Surplus/Deficit" column on the far right shows a shortage of land for parks, public facilities, schools, industrial uses, open space and public service uses as described in the application's narrative. The deficit identified for industrial uses is 774.5 acres.

The County's planning commission considered the City's UGA expansion application on November 12, 2019. A staff report provided to the planning commissioners before the meeting explained that the proposed UGA expansion addressed a "774.5-acre deficit of lands designated for industrial use within the City's current

---

[1] A left-hand column, identifying the uses and adjustments as "A" through "K," was cropped to improve the readability of the remainder.

[UGA]." CP at 639. The report stated that the planning department had "analyzed the [City's] application for consistency with the [GMA], the [County's] Comprehensive Plan, the County-Wide Planning Policies, and other regulations adopted by [the County] as applicable." CP at 640. It recommended approval with suggested findings of fact.

Following a public hearing, the planning commission provided its written recommendation to the board of county commissioners that the UGA expansion be approved. As relevant to the appeal, the planning commission found, "The application submittal complies with the locational and sizing requirements of RCW 36.70A.110." CP at 754. It found that the application responded to a "shortage of land in the City's existing UGA to accommodate future large tract industrial growth" and that the site was suitably separated from any nearby residential areas. CP at 755. Among materials the recommendation identified as having been submitted in support of the application was the City's 20 year (2017-2037) comprehensive plan.

The following "Land Use Inventory" table is included in the City's 2017-2037 comprehensive plan:

Table 2: Land Use Inventory

| Use Category | Total Acres | Developed Lands (acres) | Buildable Lands (acres) | Acres Needed for 2037 Pop. Projection | Deficit/Surplus (acres) |
|---|---|---|---|---|---|
| Residential | 10,477.5 | 6,356.4 | 4,121.1 | 2645.1 | 1,476.0 |
| *Low Density Residential* | *8,206.1* | *4,815.2* | *3,390.9* | *2,003.7* | *1,387.2* |
| *Medium Density Residential* | *1,842.7* | *1,126.0* | *716.7* | *468.6* | *248.1* |
| *High Density Residential* | *428.6* | *415.1* | *13.5* | *172.7* | *-159.2* |
| Commercial | 1,982.1 | 1,335.1 | 647.0 | 1,982.1 | 91.5 |
| Industrial | 787.5 | 462.3 | 325.2 | 1,099.7 | -774.5 |
| Parks and Recreation | 241.9 | 241.9 | 0.0 | 100.7 | -100.7 |
| Public Facilities | 324.5 | 324.5 | 0.0 | 135.0 | -135.0 |
| Schools | 237.5 | 194.2 | 43.3 | 80.8 | -37.5 |
| Open Space | 1,564.1 | 1,564.1 | 0.0 | 650.9 | -650.9 |
| Public Service | 77.2 | 77.2 | 0.00 | 12.4 | -12.4 |
| Subtotal | 15,692.3 | 10,555.7 | 5,136.6 | 5,280.1 | -143.5 |
| Market Factor (25%) | --- | --- | -1,284.2 | --- | -1,284.2 |
| Critical Areas Credit | --- | --- | 0 | 259.0 | -259.0 |
| Total | 15,692.3 | 10,555.7 | 3,852.4 | 5,539.1 | |

CP at 829 (IR/Tab 171). Like the 2018 UGA Information Sheet, the table's "Acres Needed for 2037 Pop. Projection" column for the industrial use category identifies the need as 774.5 acres.

The County's board of county commissioners passed Resolution 2019-898 and Ordinance 618, which expanded the City's UGA, in December 2019.

*Appeal, annexation, and arguments to the Board*

Futurewise, which describes itself as a Washington nonprofit corporation and statewide organization devoted to ensuring compliance with the GMA, timely petitioned for review of County Resolution 2019-898 and Ordinance 618 by the Eastern Washington

No. 37800-4-III
*City of Kennewick v. Futurewise, et al.*

Growth Management Hearings Board. It alleged that the County's legislative actions failed to comply with a number of provisions of the GMA and several County CPPs.

Before the Board could hear and determine Futurewise's petition for review, the City passed Ordinance 5863, which annexed the 279.53 acres newly added to the UGA. The annexation was not challenged. The City then filed a motion to intervene in Futurewise's appeal, which was granted. It moved to dismiss Futurewise's petition on the basis that annexation of the property caused the Board to lose subject matter jurisdiction and rendered moot the issues raised in Futurewise's petition for review. The Board declined to decide those issues on a limited record and deferred a decision on mootness to the hearing on the merits.

Futurewise was required to file an opening prehearing brief, with the City and County's responses to be filed three weeks thereafter. As relevant to the appeal, Futurewise's prehearing brief argued that the County's expansion of the UGA exceeded the amount of land necessary to accommodate the urban growth projected by OFM because "[as] part of the 2018 update to the comprehensive plan, Benton County added 901 net acres to the UGA *shared* by Kennewick for industrial uses," and, "This expansion exceeds the 774.5-acre industrial land deficiency identified by the City of Kennewick." CP at 441 (emphasis added). The source cited by Futurewise for the 901 acre addition to the UGA, page 50 of the County's *February 2018 Comprehensive Plan Update*, IR/Tab 96, states:

8

> Currently, the County is updating the UGA boundary in two areas as follows:
>
> 1.      City of Richland UGA expansion.  As discussed before, 13,641 acres of Hanford land was transferred from the U.S. Department of Energy to the City of Richland, the Port of Benton, and Energy Northwest. As a result, the City has applied for an UGA expansion to add 1,184 acres of Hanford land to its UGA and remove 283 acres from the Richland UGA (for a net increase of 901 acres).

CP at 553.

In support of Futurewise's position that this was an increase to the UGA "shared" by Kennewick for industrial uses, it asserted that "Kennewick, Richland, and West Richland share a single UGA."  CP at 440.  As evidence that the three cities share a single UGA, Futurewise cited and provided copies of pages 8 and 9 of IR/Tab 109, the October 2019 staff report to the planning commission (CP at 564-65); a 2006 map attached to IR/Tab 96, the County's *February 2018 Comprehensive Plan Update*, (CP at 554); and language at page 5 of exhibit A to Benton County Ordinance 581 (CP at 373).

As further support, Futurewise argued that the 2016 ECONorthwest industrial zoned land assessment commissioned by the City recognized there were adequate industrial lands in the area to accommodate growth, quoting a statement on page 32 of the report that "'there is enough developable land to accommodate several decades of growth.'"  CP at 441 (quoting IR 172; *see* CP at 618).

9

Futurewise also challenged the County's legislative action as violating some of the County's CPPs and the statutory requirement that reducing sprawl, among other goals, should guide the development of comprehensive plans and development regulations.[2]

The County's and City's responsive prehearing briefs disputed Futurewise's premise that the cities of Kennewick, Richland, and West Richland share a single UGA. The County argued that the premise was not supported by the staff report on which Futurewise relied and argued that "[m]ore importantly, the County's comprehensive plan could not be clearer on this point." CP at 632. The City argued that Futurewise's claim that it shared a UGA with West Richland, "a municipality 15 miles distant," was "nonsensical," and "[n]o text of the County's comprehensive plan indicates the existence of a single shared UGA for all cities." CP at 718. The City also pointed out that the 1,686.7 total land deficit identified in its 2017 comprehensive plan based on its 2037 population projection exceeded the 774.5 acre deficit of industrial land based on the City's planning goals.

In addition to responding to these and Futurewise's other challenges, the City and County reprised their earlier argument that the issues before the Board were rendered moot by the City's annexation of the subject 279.53 acres.

---

[2] Additional challenges were raised by Futurewise but were rejected by the Board and are not at issue on appeal.

10

At the hearing on the merits, Board members heard first from Futurewise, then the

County, and then the City, posing questions during each presentation. One Board

member asked Futurewise's lawyer about the 2018 UGA information spreadsheet

(reproduced above):

> MR. PAOLELLA: Okay. And that's the spreadsheet that shows a need for industrial lands of 1,099.7 acres; is that right?
>
> MR. TROHIMOVICH: That's my recollection of what the spreadsheet shows.
>
> MR. PAOLELLA: The next column shows a deficit of 774.5 acres for industrial?
>
> MR. TROHIMOVICH: Yes, that's my recollection.
>
> MR. PAOLELLA: How is what is happening here a problem if this spreadsheet shows that there is a deficit of 774.5 acres?
>
> I mean, doesn't that—that's not being challenged, that spreadsheet.
>
> Doesn't that show that Kennewick does, in fact, need to come up with more industrial acreage to accommodate growth?
>
> MR. TROHIMOVICH: It does not, and it doesn't for two reasons.
>
> First, as I pointed out in the beginning of this oral argument, and I think I will bring up that slide again, the City's own industrial assessment says, "There is enough developable industrial land to accommodate several decades of growth," and the second—so that—their own study shows there's enough land for industrial development.
>
> The second problem with that spreadsheet, as I mentioned, is it doesn't reflect the fact that there's a shared urban growth area, and it only looks at Kennewick.

Report of Proceedings (RP) at 21-22.

When Board member Paolella asked Futurewise's lawyer how the 279 acre

expansion compared to the OFM projected need, counsel responded that the expansion

11

*did not* compare to the need, again relying on the narrative from the 2016 *Industrial Zoned Land Assessment*. Pressed about whether there *were* growth projection numbers, Futurewise's counsel stated he recalled that there were, but "I don't have that right in front of me." RP at 27.

Benton County's lawyer was heard from next. He vehemently disputed Futurewise's contention that Kennewick shared a UGA with the cities of Richland and West Richland, a proposition he said "came out of nowhere and shocked both myself and our planning department." RP at 36. He, too, responded to questions about how the 279.53 acre UGA expansion compared to projected growth:

> MR. PAOLELLA: . . . So in the County's decision to expand the boundaries by this 279 acres, where is the analysis of the County that shows the correspondence between OFM projected growth, on the one hand, versus the size of the UGA expansion?
>
> Where is that analysis?
>
> MR. BROWN: I would say we relied on the Kennewick land assessment.
>
> MR. PAOLELLA: The County didn't do any analysis of its own?
>
> MR. BROWN: I don't believe we did an independent analysis.
>
> MR. PAOLELLA: Okay. And if there was, in fact, a deficit of 774 acres for industrial, is that a match to just enlarge the UGA by 279 acres?
>
> 279 is a different number than 774.
>
> MR. BROWN: That's all they applied for.
>
> We granted them what they applied for.

RP at 41-42.

12

When it was the City's turn to present, its lawyer addressed the earlier questions about the relationship between the asserted 774.5 acre need and OFM growth projections, citing "the actual land capacity documents that were in the record." RP at 50. He continued:

> Those land capacity documents themselves have not been attacked by Petitioner in this case.
>
> In other words, you will not find anything in Petitioner's statement of issues, you will not find anything in the briefing where the petitioner argues that the City of Kennewick has improperly performed the formula of the countywide planning policies, particularly Countywide Planning Policy No. 4, to establish an industrial lands goal and link that goal to OFM population figures.
>
> That's the standard of Countywide Planning Policy No. 4. It's laid out, the formula is there, that is easily found throughout the record, frankly, but easily found at IR 184.

RP at 51.

He identified and related the two documents reproduced above:

> The spreadsheet at 171 is the land use inventory document of the City's comprehensive plan.
>
> The actual land capacity analysis in support of the UGA expansion is at IR 179.
>
> Just to make sure we are not speaking past each other, I think you'll find there are two documents that could be called "spreadsheet," and I just want to make sure both get the attention they deserve.
>
> Right now I am just going to speak to 171. That's the land use inventory of the City of Kennewick, and we find there, as I think everybody that's been listening has already certainly heard, we find a deficit of 774 and a half acres of industrial land.
>
> . . . .

13

Then at 179 here is where things become linked to OFM numbers.

At 179 you will find the actual land capacity analysis that supported this UGA application.

In that document you will find the spreadsheet that identifies a per-capita, consistent with Countywide Planning Policy No. 4. You will find a per capita statement for different types of land uses, all of which are key to the OFM population expectation, which I believe for Kennewick is on the order of 32,000 additional residents over the planning horizon.

RP at 52-53.

The City's lawyer discounted the 2016 industrial zoned land assessment relied on by Futurewise as dated and not integrated into the City's land capacity analysis or comprehensive plan. He argued that when the authors of the report spoke at its page 32 of there being enough land "in aggregate" to accommodate growth, they were speaking to the availability of land in the County and in the Tri-Cities region. RP at 49-50.

Toward the end of the City's presentation, Board Member Paolella returned again to the relationship between OFM projections and the 279.53 acre increase in the County's UGA, revealing an apparent concern that a *774.5 acre* need had been identified, but not a 279.53 acre need:

MR. PAOLELLA: . . . Where is the analysis showing that a 279 acre UGA expansion is the correct, quote, unquote, "size" of the UGA expansion necessary to accommodate OFM projected growth?

MR. HARPER: The Tab 179.

MR. PAOLELLA: You have already talked about.

We have a 279 acre expansion, on the one hand, but where—can we find something close to 279 acres in IR 179?

14

Is there a match or a close-to match or correspondence or, you know—whatever word you use, you know, under the Thurston County[3] Supreme Court test, "Nothing more, nothing less," you know?

I mean, the deficit was 774.5 acres. The increase in the UGA was 279 acres. That seems like a little bit of a discontinuity there.

Where is the analysis showing the correct sizing of the UGA expansion?

MR. HARPER: Well, two responses:

One, I can only point to what's in the record.

MR. PAOLELLA: Of course. Just limit it to that.

MR. HARPER: 179 and 171 are the two sources.

You also asked for a little bit of explanation.

I suppose what I would say there, Mr. Paolella, is that the justification for the UGA expansion is 171 and 179.

The application for this particular 279 acres is key to site-specific circumstances; in other words, we still would have a deficit, based on IR 171 and 179.

We are mitigating that deficit with this UGA expansion, and because of the site's characteristics, the freeway access, sort of the natural buffer of I-82 from Southridge residential development, which is occurring across the freeway to the north—and, frankly, because of a very low sort of environmental significance profile, those are all the things that made this site suitable.

It's under, I guess, one or two parcels, or maybe it's just one parcel of ownership. That improves the usability of the site for industrial purposes.

I don't think I'm going to be able to point you to a document in the record that says that it shall be 279 acres, but I think we have a basis in our industrial lands deficit that then supported the City's desire to do a land capacity analysis, a capital facilities planning analysis, and, frankly, put a

---

[3] *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 190 P.3d 38 (2008) (*Thurston County* II).

tremendous amount of effort into supporting a UGA expansion for this area.

I would say it's a combination of the OFM numbers and the land capacity analysis indicating that a site was appropriate—that a UGA expansion was appropriate, and then just good planning work identifying this was a likely candidate.

MR. PAOLELLA: That, and the County said it relied, really entirely, on the City's analysis, and they didn't do their own—an interesting question about—maybe it's a rhetorical question, whether if there's a 774.5 acre deficit, whether the UGA expansion should have been 774.5 acres, not 279 acres, but that's just—I was just wondering there.

Okay. Thank you on that.

RP at 74-76.

In his rebuttal presentation, Futurewise's lawyer reiterated that the County more than met the 774.5 acre need by adding 901 acres to a UGA that Kennewick shared with Richland and West Richland. He reminded Board members of the statement in the 2016 *Industrial Zoned Land Assessment* about there being adequate land in the area for industrial development. He stated that Futurewise *did* challenge the City's figures, identifying its challenge as being that "it doesn't take into account the entire urban growth area." RP at 90.

*Board decision*

In the Board's final decision and order issued in July 2020, two board members denied the motion to dismiss the petition as moot, concluding that the Board could provide effective relief. One Board member dissented on that issue. The final order and decision was otherwise joined by all three members.

16

Addressing Futurewise's challenge that the UGA as expanded was oversized, the Board explicitly declined to resolve "the factual dispute between the parties as to whether there exists a shared UGA for the Cities of Richland, Kennewick, and West Richland," stating "it is not necessary" that the dispute be addressed. CP at 905. The Board did not make a factual finding on the disputed import of language from the ECONorthwest report about there being enough developable land to accommodate several decades of growth.

Instead, finding "no support . . . for Kennewick's position that a deficit previously identified in the *City's* Comprehensive Plan in some manner exempts a subsequent *County* action to revise UGA boundaries from challenge," the Board decided the challenge on the sizing issue, on the basis that the County failed to "show its work." CP at 905-06. It explained:

> Given the dearth of information in the record, the Board is not able to review the basis of the County's decision on UGA sizing nor assess whether the listed acreage corresponds to the amount of land necessary to accommodate the urban growth projected by OFM. Benton County has failed to show its work on the Kennewick UGA expansion. The Board cannot determine whether size of the UGA is too large, too small, or just right to accommodate projected growth.

CP at 906 (emphasis omitted). The Board found that in adopting Resolution 2019-898 and Ordinance 618, the County failed to comply with RCW 36.70A.110 and RCW 36.70A.115. *Id.*

The Board treated Futurewise's challenge that the County's action created low-density sprawl in violation of GMA development goals and County CPPs as a corollary

17

to the UGA sizing issue. It found noncompliance, stating, "[t]he Board has already concluded that the UGA expansion was not based upon [OFM population projections]." CP at 908.

The City timely petitioned for judicial review of the issues on which it had not prevailed. At Futurewise's request, the Board issued a certificate of appealability allowing it to bypass review by the superior court. *See* RCW 34.05.518(3). This court accepted review.

ANALYSIS

The Board adjudicates issues of GMA compliance and may invalidate noncompliant comprehensive plans. RCW 36.70A.302(1)(a). A comprehensive plan is presumed valid and "[t]he board shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]." RCW 36.70A.320(3). To find an action clearly erroneous, the Board must have a "'firm and definite conviction that a mistake has been committed.'" *Thurston County* II, 164 Wn.2d at 340-41 (quoting *Lewis County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 157 Wn.2d 488, 497, 139 P.3d 1096 (2006)).

Judicial review of Board decisions is provided by the Washington Administrative Procedure Act, chapter 34.05 RCW. The City challenges the Board's order under RCW 34.05.570(3)(b), (d), and (e), as outside its statutory authority or jurisdiction, as based on

18

an erroneous interpretation or application of the law, and as unsupported by evidence that is substantial in light of the whole record. Our review of alleged errors of law is de novo, and challenges that an order is not supported by substantial evidence are determined by considering where there is a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order. *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011)).

In reviewing Board decisions, we give "substantial weight" to the Board's interpretation of the GMA. *Id.* at 154. Our deference to the Board is superseded, however, by the deference the GMA requires the Board to give to county planning actions that are consistent with the goals and requirements of the GMA. *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 154 Wn.2d 224, 238, 110 P.3d 1132 (2005).

I.      THE BOARD MISAPPLIED ITS "SHOW YOUR WORK" REQUIREMENT

   A.      *To avoid violating the presumption of plan validity and improperly shifting the burden of proof, the "show your work" requirement can be applied only when a petitioner presents a prima facie challenge to a calculation that requires a response*

The County is required by the GMA to designate "an urban growth area or areas within which urban growth shall be encouraged and outside of which growth can occur only if it is not urban in nature." RCW 36.70A.110(1). "Each city" located in the

County "shall be included within an urban growth area." *Id.* An urban growth area "may include more than a single city." *Id.*

The GMA requires a county's UGA to be "[b]ased upon the growth management population projection made for the county by the office of financial management." RCW 36.70A.110(2). "Oversized UGAs are perhaps the most egregious affront to the fundamental GMA policy against urban sprawl, and it is this policy that the UGA requirements, more than any other substantive GMA mandate, are intended to further." *Thurston County* II, 164 Wn.2d at 351 n.13. "[A] county's UGA designation cannot exceed the amount of land necessary to accommodate the urban growth projected by the OFM, plus a reasonable land market supply factor." *Id.* at 352.[4]

In addressing issues of whether a UGA is oversized, all three growth management hearing boards have adopted a "show your work" requirement. *Petree v. Whatcom County*, No. 08-2-0021c, 2008 WL 4949257, at *14 (W. Wash. Growth Mgmt. Hr'gs Bd. Oct. 13, 2008) (capitalization omitted). As explained in *Petree:*

> "The phrase "show your work" was first used by the Central Puget Sound
> Growth Management Hearings Board to describe the explicit
> documentation of factors and data used by counties when undertaking the

---

[4] A market factor "'represents the estimated percentage of net developable acres contained within a UGA that, due to idiosyncratic market forces, is likely to remain undeveloped over the course of the twenty-year planning cycle.'" *Thurston County* II, 164 Wn.2d at 353 (quoting Brent D. Lloyd, *Accommodating Growth or Enabling Sprawl? The Role of Population Growth Projections in Comprehensive Planning under the Washington State Growth Management Act*, 36 GONZ. L. REV. 73, 118 (2001)).

> sizing of UGAs. Because UGA sizing relies primarily on mathematical calculations and numerical assumptions, the Board concluded that such a showing of work was required in order to demonstrate the analytical rigor and accounting that supported the sizing and designation of UGAs; without which both the Board and interested citizens would have no criteria against which to judge a County's UGA delineation."

*Id.* at \*15 (footnote omitted) (quoting Order on Recons., *Panesko v. Lewis County*, No. 08-2-000, at 7-10 (Sept. 11, 2008)).

The Washington Supreme Court had occasion to address the "show your work" requirement in *Thurston County* II, in which it rejected, in part, Division Two's adoption and application of the requirement. At issue in that case were portions of Thurston County's comprehensive plan and development regulations that had been found noncompliant by the Board. *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 137 Wn. App. 781, 154 P.3d 959 (2007) (*Thurston County* I). Among other violations of the GMA, the Board found that Thurston County failed to explain why, when the projected demand for residential urban lands in its 20-year planning horizon was 11,582 acres, it had allocated 18,789 acres for this use. *Id.* at 803. Division Two of this court observed, "[t]his projection leaves 7,205 acres, or approximately 38 percent of available residential lands, unused at the end of the current 20-year planning period." *Id.* Before the Board and on appeal, the County asserted that its use of a 38 percent market factor "was reasonable, that it based the factor on local circumstances, and that the factor was within the local discretion permitted by RCW 36.70A.110(2)." *Id.*

21

While Division Two acknowledged that the argument "seems to bring the County's action within the 'broad range of discretion' that the [GMA] grants to counties," it found it problematic that the County "*did not state in its comprehensive plan* that it used a 38 percent market factor to increase the amount of acreage needed to accommodate growth or explain or justify the use of a market factor." *Id*. at 803 (emphasis added). Division Two agreed with the Board's decision that "without designating the excess as market factor and explaining the need for it, the County's expansion of its UGAs failed to meet GMA goals." *Id.* at 804-05.

The Supreme Court reversed on this issue and remanded for further proceedings before the Board. It held that "[t]he GMA does not support" Division Two's reasoning that a county must explain its justification for employing a land market supply factor and defend the reasonableness of the factor in its comprehensive plan. Instead, "[a] comprehensive plan is presumed valid upon adoption, and the petitioner has the burden of demonstrating the plan fails to comply with the GMA." *Thurston County* II, 164 Wn.2d at 352. The Court continued,

> The GMA does not require a county to explicitly identify a land market supply factor or provide justifications for adopting such a factor in the comprehensive plan. A county is required to justify its UGA designations if it fails to reach an agreement with a city. RCW 36.70A.110(2). No analogous provision requiring a county to explicitly identify and justify a UGA boundary adopted in a joint plan with a city exists.

22

*Id.* It concluded, "To require a county to justify its use of a land market supply factor is to presume the UGA designation is invalid and to place the burden on a county to justify its actions." *Id.*

The court held, "Once a petitioner challenges the size of a county's UGA, the county may explain whether the difference between the supply and demand is due to a land market supply factor or other circumstances." *Id.* at 353. And "[i]f the county asserts a land market supply factor was used in designing the UGA boundaries, the petitioner may argue the factor employed was clearly erroneous and unreasonable based on the facts in the record." *Id.*

Following the decision in *Thurston County* II, the Growth Management Hearings Board for Western Washington observed in *Petree* that "the purpose and function of the Board's 'show your work' requirement is, and in this Board's view has always been, a demonstration by the County upon challenge of the facts and evidence supporting its action in response to a petitioner's *prima facie* case." *Petree*, 2008 WL 4949257, at *16. It continued:

> There is no distortion of the presumption of validity or a shifting of the burden; the presumption is rebuttable by evidence and legal argument for which the County must present contrary evidence from the Record. Without having the ability to review supporting evidentiary documentation, the Board's ability to determine whether a jurisdiction has complied with the GMA would be irretrievably compromised.

*Id.* Elsewhere, it stated, "[T]he Board is not asking for the County to demonstrate it has complied with the GMA rather it is only requiring the County respond to assertions made by the petitioner that the County's actions were non-compliant with the GMA." *Id.*

The Board's decision in favor of Futurewise in this case did not turn on the support or lack of support for a market factor. But the Supreme Court's decision in *Thurston County* II has broader significance. *Thurston County* II holds that because a county's plan is presumed valid and the petitioner, not the county, bears the burden of proof, the Board cannot require a county to show its work unless and until the petitioner presents a prima facie challenge that the Board cannot determine without a responding explanation from the county.

> B.    *Futurewise made no prima facie challenge to the City's land capacity calculations; it challenged only alleged reporting errors*

The Board's decision that the County failed to comply with RCW 36.70A.110 and .115 is based on its conclusion that Futurewise "satisfied its burden of proof to show that the UGA expansion was not 'based upon the growth management population projection made for the county by the office of financial management.'" CP at 906. Yet this was based on subsidiary findings about what *the County failed to show*, not what was shown by Futurewise. The Board found:

- The County's resolution and ordinance "have no specific findings/conclusions stating that the size of this UGA expansion _corresponds to_ the amount of land necessary to accommodate the urban growth projected by OFM," CP at 905 (some emphasis omitted);

24

- ▪ "Benton County relied on the City of Kennewick to provide [such an] analysis," CP at 905;

- ▪ A City UGA information worksheet included in the record "appears to represent a calculated conclusion . . . that Kennewick believes it needs 1,099.7 acres of additional land for industrial use," "[b]ut the formula is not disclosed, the calculations and assumptions are not shown, and there is no narrative explaining how this work was done to compute the resulting 1,099.7 acres," CP at 906; and

- ▪ "Benton County has failed to show its work on the Kennewick UGA expansion." CP at 906.

Futurewise made no prima facie challenge to the City's land capacity analysis.

That land capacity analysis identified the "Acres Needed for 2037 Pop. Projection" in the industrial use category was 1,099.7 acres; it identified 325.2 acres of "Buildable Lands" in that category; and its "Deficit/Surplus (acres)" in the industrial category was therefore a negative 774.5 acres. CP at 829 (IR 171).

Futurewise's position was actually predicated on the calculation of the 774.5 acre need. Its complaint was that the County failed to report that because Kennewick, Richland and West Richland share a UGA, the 774.5 acre need had been more than met by the expansion of a UGA in or adjoining Richland. As the Board's decision and order itself states in summarizing the "positions of the parties":

> Futurewise alleges that the Cities of Kennewick, Richland, and West Richland all share a single UGA and as part of the 2018 update to the comprehensive plan, Benton County added 901 net acres to the UGA shared by Kennewick for industrial uses, which exceeds the 774.5-acre industrial land deficiency identified by the City of Kennewick in its 2018 UGA Information Spreadsheet.

25

CP at 20 (citing Futurewise's Pet'r's Prehearing Br. at 4-5 (May 7, 2020)). Futurewise

buttressed its position with the statement in the 2016 *Industrial Zoned Land Assessment*

about there being enough developable land to accommodate several decades of growth.

The City and County responded to Futurewise's position with contrary evidence

and argument. The Board was not presented with the situation described in *Petree*, in

which a county's failure to provide evidence in response to a petitioner's evidence

"irretrievably compromise[s]" the Board's ability to determine a petitioner's challenge.

*Petree*, 2008 WL 4949257, at *16. The Board refused to decide whether the City shared

a UGA with Richland and West Richland not because it was unable to, but because, it

explained, "it is not necessary." CP at 905. It was not necessary because the Board

based its decision on the issue the Board raised sua sponte: whether the County failed to

show its work.

On appeal, Futurewise contends it is entitled to argue that the County's UGA is

noncompliant not only based on facts in the record, but by pointing out the absence of

facts in the record. When it comes to an issue on which Futurewise made no prima facie

claim and as to which it bore the burden of proof, however, the Washington Supreme

Court held otherwise in *Thurston County* II. And Futurewise never argued to the Board

that it should prevail because the County failed to show its work. The Board arrived at

that rationale for its decision on its own.

Alternatively, Futurewise asks us to affirm the Board on the basis of its theory that a UGA that Kennewick shares with Richland and West Richland has already been expanded beyond what was a 774.5 acre need with the 901 acre expansion of the UGA in or adjacent to Richland. To make that determination, we would be required to weigh evidence. It is not our role to make factual findings that the Board was asked, but declined, to make. *Shaw v. Dep't of Ret. Sys.*, 193 Wn. App. 122, 134, 371 P.3d 106 (2016) (declining to consider issue where, although agency heard testimony, agency made no findings of fact on the issue) (citing *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App. 933, 942, 155 P.3d 177 (2007)).

The Board's finding that the County failed to comply with RCW 36.70A.110 and .115 because it failed to show its work was based on an erroneous interpretation or application of the law.

C. *The Board's findings that the County relied on the City's land capacity analysis and that the 279.53 acre expansion does not correspond to a 774.5 acre need are not a basis for affirming the Board's finding of noncompliance*

While it seems clear the Board's decision and order were based on an alleged failure of the County to show its work, Board members raised two other concerns during the hearing on the merits that appear in the Board's findings and warrant brief discussion.

The Board states it "finds no support in the GMA for Kennewick's position that a deficit previously identified in the *City's* Comprehensive Plan in some matter exempts a

27

subsequent *County* action to revise UGA boundaries from challenge." CP at 905. The City did not take that position before the Board (nor did the County), and the City does not take that position on appeal. *See* Reply Br. of Pet'r at 13 ("To be sure, the ultimate decision to expand a UGA rests with the relevant county, and a county therefore must be satisfied that a UGA expansion comports with the GMA."); *and see* RCW 36.70A.110(1), (2).

The County must be able to defend a land capacity analysis on which it relies, but nothing in the GMA prohibits counties from relying on its cities' land capacity analyses and adopting UGA boundaries recommended by its cities. "[C]oordination and consultation between a county and its cities underlies many aspects of the GMA, including the designation of UGAs." *Petree*, 2008 WL 4949257, at *13. "[T]he GMA requires counties to consult with each of its cities and attempt to reach agreement as to the location of the UGA"; indeed, if agreement cannot be reached, the County may designate a UGA it deems appropriate, but must justify its actions in writing. *Id.* (citing RCW 36.70A.110(2)).

The Board also questioned why the County acted to expand the industrial acreage in the City's UGA by only 279.53 acres if the need identified by the City's land capacity analysis was 774.5 acres. Its decision and order question the lack of findings that the size of its expansion "*corresponds to*" the projected need based on OFM growth projections. CP at 905. The GMA is concerned with oversized UGAs, however, not with undersized

UGAs. *Thurston County* II, 164 Wn.2d at 351 & n.13 ("If the size of a UGA is not limited, rural sprawl could abound."). This would seem especially true in the early years of a 20-year plan, when cities and counties might be assessing the optimal areas for UGA designation. In any event, if an *inadequate* UGA expansion was the basis for a petitioner's challenge—and it was not here—invalidating approval of the partial expansion would not be the appropriate remedy.

II.     BOARD FINDINGS DO NOT SUPPORT ITS CONCLUSION THAT THE UGA EXPANSION
        WOULD CAUSE LOW-DENSITY SPRAWL

The City also assigns error to the Board's finding and conclusion "that in enacting Benton County's Resolution 2019-898 and Ordinance 618, Benton County was not guided by GMA Planning Goal [2 to] reduce the inappropriate conversion of undeveloped land into sprawling, low-density development." CP at 908.

Thirteen GMA planning goals, including the goal of "reduc[ing] sprawl," are set forth in RCW 36.70A.020 and shall be used "exclusively for the purpose of guiding the development of comprehensive plans and development regulations."[5] "The GMA 'explicitly denies any order of priority among the thirteen goals' and it is evident that

---

[5] Goal 2 states in its entirety, "Reduce sprawl. Reduce the inappropriate conversion of undeveloped land into sprawling, low-density development." RCW 36.70A.020(2).

29

'some of them are mutually competitive.'" *Quadrant Corp.*, 154 Wn.2d at 246 (quoting Richard L. Settle, *Washington's Growth Management Revolution Goes to Court*, 23 SEATTLE U. L. REV. 5, 11 (1999)).

The Washington Supreme Court has held that the goals, including the goal of reducing sprawl, do not place substantive requirements on local governments. *Whatcom County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 186 Wn.2d 648, 689, 381 P.3d 1 (2016). Accordingly, to establish a county's failure to be guided by one or more of the planning goals in RCW 36.70A.020, the petitioner must first establish a violation of a related GMA requirement. *See City of College Place v. Walla Walla County*, No. 19-1-0004, 2020 WL 2069271, at \*10 (E. Wash. Growth Mgmt. Hr'gs Bd. Mar. 30, 2020).

Recognizing this, Futurewise argued in its prehearing brief that the goal of reducing sprawl is implemented in part by the County's CPPs, and the County's UGA expansion violated its CPPs by, e.g., expanding into an area of vacant farmland and wildlife habitat that lacks adequate public facilities and services, is not adjacent to territory already characterized by urban growth, and to which needed facilities cannot be provided in an efficient manner. *See* CP at 443-47. For its part, the City contends that the area of expansion meets the criteria for designating industrial UGAs, citing WAC 365-196-310(4)(c)(iv) (listing highway access, large parcel size, and absence of surrounding incompatible uses).

30

The Board made no findings that the County's UGA expansion violated County CPPs in any of the respects contended by Futurewise. It agreed with the City that public utilities and services could be extended to serve the property in an efficient manner and that the UGA expansion met the GMA's goal regarding transportation systems. It rejected Futurewise's argument that the expansion would harm the environment. In concluding that the County's legislative action was not guided by GMA Planning Goal 2, the Board relied on one thing: the fact that it had "already concluded that the UGA expansion was not based upon the growth management population projection made for the County by [OFM]." CP at 908.

Whether a county has committed a violation that reveals a failure to be guided by a goal of reducing the conversion of undeveloped land into low-density sprawl presents a different question. Even if the County had failed to show its work—and we have concluded that no duty to show its work was triggered—that would not, in itself, equate to promoting sprawl. The Board's conclusion that the County failed to comply with RCW 36.70A.020(2) is not supported by its findings.

We reverse (1) the Board's finding and conclusion that in adopting Resolution 2019-898 and Ordinance 618, Benton County failed to comply with RCW 36.70A.110 and .115, (2) its finding and conclusion that in adopting the resolution and ordinance, the County was not guided by GMA Planning Goal 2 to reduce the inappropriate conversion

No. 37800-4-III
*City of Kennewick v. Futurewise, et al.*

of undeveloped land into sprawling, low-density development, and (3) its order remanding the resolution and ordinance to the County for compliance.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, A.C.J.

WE CONCUR:

Lawrence-Berrey, J.

Staab, J.

32